## Aikens *v.* Aikens, Appellant.

*Divorce—Cruel and barbarous treatment—Charge of infidelity.*

1. Where a husband tells his wife that he had been intimate with another woman for the purpose "that if she believed me that she would leave me," and the wife does believe him, and afterwards charges him with infidelity, and makes statements to that effect to other persons, the husband in a subsequent suit for divorce cannot allege such charges and statements as cruel and barbarous treatment and indignities within the meaning of the act.

2. Where first cousins were married prior to the date of the act which made such a union illegal, the court cannot in a divorce proceeding instituted after the passage of the act consider the fact that the parties were first cousins as in any way material to the issue involved in the proceeding.

3. A husband will not be granted a divorce on the ground of indignities to the person and cruel and barbarous treatment where the only evidence of such acts is the testimony of the husband himself, and all of such acts are denied by the wife and contradicted in most essentials by other witnesses, even those called by the libelant.

Argued March 9, 1914. Appeal, No. 9, March T., 1914, by defendant, from order of C. P. Mifflin Co., Aug. T., 1911, No. 41, granting divorce in case of Howard W. Aikens v. Mollie A. Aikens. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Exceptions to report of John T. Wilson, Esq., master. The facts are stated in the opinion of the Superior Court.

*Error assigned* was order granting divorce.

*W. W. Mentzinger, Jr.,* with him *Samuel I. Stoner,* for appellant.—The burden is upon the libelant to satisfy this court by the preponderance of credible, competent evidence that, under the Act of June 25, 1895, P. L. 308, his wife did "by cruel and barbarous treatment or indignities to his person, render his condition intolerable and life burdensome:" Biddle v. Biddle, 50 Pa. Superior Ct. 33; May v. May, 62 Pa. 206; Melvin v. Melvin, 130 Pa. 6.

A complainant is not entitled to a divorce where the violence was provoked by the complaining party, unless the retaliation was excessive: Richards v. Richards, 37 Pa. 225; Riester v. Riester, 11 Pa. Dist. Rep. 99; Lloyd v. Lloyd, 2 Woodw. 481; Doan v. Doan, 3 Pa. L. J. (Cl.) 7; Hugo v. Hugo, 9 Kulp, 280; Powers v. Powers, 84 N. Y. App. Div. 588.

*F. W. Culbertson,* of *Culbertson & Culbertson,* for appellee.—Under the Act of May 8, 1854, P. L. 644, "A divorce may be granted to a husband where his wife has by cruel and barbarous treatment of him rendered his condition intolerable or life burdensome, although such treatment may not have endangered his life:" Barnsdall v. Barnsdall, 171 Pa. 625; Shaw v. Shaw, 36 Pa. Superior Ct. 122; Fay v. Fay, 27 Pa. Superior Ct. 328; Barnsdall v. Barnsdall, 171 Pa. 631; Heilbron v. Heilbron, 158 Pa. 297; Jones v. Jones, 66 Pa. 494.

The law has made the libelant a competent witness. Whether credible is a question to be determined by the tribunal which is to pass upon the facts: King v. King, 36 Pa. Superior Ct. 33; Flattery v. Flattery, 88 Pa. 27; Baker v. Baker, 195 Pa. 407; English v. English, 19 Pa. Superior Ct. 586.

OPINION BY PORTER, J., July 15, 1914:

The plaintiff averred in this libel that the respondent, "hath offered such indignities, and cruel and barbarous treatment to the person of the libelant as to render his condition intolerable and his life burdensome, and thereby compelled him to withdraw from his house and home," and prayed for a decree of divorce from the bonds of matrimony. While the allegation of the libel does not follow the language of the statute, the jurisdiction invoked is that conferred by the Act of June 25, 1895, P. L. 308. The respondent having filed an answer denying the allegations of the libel, the court appointed a master, who after taking testimony filed a report recommending that a decree of divorce be granted, which report the learned judge of the court below approved and entered a decree divorcing the parties. The respondent appeals from that decree.

These parties were first cousins and were married in the year 1895, in the state of Maryland, where the marriage of first cousins was lawful, as it would have been, at that time, if the marriage ceremony had taken place in the state of Pennsylvania. The only ground which the plaintiff had alleged in his libel as entitling him to a divorce was that the respondent had by cruel and barbarous treatment and indignities to the person of the libelant rendered his condition intolerable and life burdensome, and the court was without authority to grant a decree for any other cause than that stated in the libel. The learned judge of the court below fell into error in giving any weight and effect to the personal opinion of the master "that it is wrong for persons so nearly related by blood relation to enter the marriage state." The master seems to have proceeded as if the court were vested with jurisdiction to enter a decree of divorce in any case in which, in the opinion of the court, the best interests of the parties would be furthered by such a decree. The courts are without jurisdiction to grant a divorce for any cause

not expressly authorized by statute, and there is no statute which authorizes a court to decree a divorce upon the ground that the ends of justice will thereby be furthered, or that the parties had become estranged and there is no possible chance of their becoming reconciled. The fact that these parties were first cousins was entirely immaterial to the issue involved in this case.

The testimony of disinterested witnesses fairly warrants the conclusion that the respondent had during the last two years that she and the libelant lived in the same house charged her husband with marital infidelity. That is the only conduct on her part testified to by any disinterested witness which could afford any ground for holding that she had been guilty of cruel and barbarous treatment or indignity to the person of her husband. Out of all the witnesses who testified on behalf of the libelant, excepting himself, not one suggested that they had ever noticed any act of violence or heard any word which threatened violence, upon the part of the wife towards her husband. The only suggestions from those witnesses which indicated that the wife had not on all occasions treated her husband kindly were of the most trivial character. One witness said that the libelant had on one occasion offered to put on his wife's overshoes and that "She told him she did not need any assistance; that is the only thing I ever saw that was not entirely right and proper." Another witness said that upon one occasion, "She exhibited coolness towards him. I do not know the cause. That is all I ever saw that was not right;" while a third witness said that she sometimes turned her cheek when her husband went to kiss her. When the libelant feels constrained to produce evidence as to such trivial incidents, which certainly do not involve either cruel and barbarous treatment or indignities to the person, and fails to produce any disinterested testimony showing misconduct of a more serious character, it is fair to assume that he is presenting the best evidence ob-

tainable in support of his own contention. The testimony of these disinterested witnesses did establish that the respondent had charged the libelant, during the last two or three years, with having violated his marriage vows; and that is all that it did establish. These charges, in so far as they were testified to by disinterested witnesses, were confined to the last two or three years prior to the taking of the testimony before the master, as is shown by the testimony of Mrs. W. A. Schell, a witness called on the part of the libelant. This witness testified that she knew the parties very well and frequently visited at their house, that during the early years everything seemed very pleasant in their home, that Mrs. Aikens "always bragged Mr. Aikens up as being so good." "I never knew of any trouble until the last two or three years." "I heard nothing of it until the last two or three years. I thought everything was going on smoothly until after she found these letters. She never would acknowledge that Mr. Aikens was not straight until she found these letters." This testimony is in harmony with that of the other disinterested witnesses. Now these letters were found by the respondent in the desk of her husband, in October, 1909, and not in 1899, as the report of the master seems to indicate. The accusations of the libelant by the respondent, as testified to by the disinterested witnesses, were all confined to the period subsequent to 1908, which is to be kept in mind in our subsequent inquiry as to whether the respondent had reasonable ground for making the accusation.

The libelant testified in his own behalf to many acts upon the part of his wife, which if established by the weight of the evidence might properly be held to constitute cruel and barbarous treatment and indignities to his person. He testified that she had on several occasions scratched him, that she had on two or three occasions struck him with her fist, that she had thrown a skillet at him, that on one occasion when she became

angry she threw dishes on the floor and broke them and to many other acts which would naturally tend to render a home unhappy. The testimony of the libelant, as to these things, was not corroborated by any other witness. The respondent unequivocally denied all the testimony of the libelant as to these matters, save that upon two occasions she had, when they were quarreling struck him with her fist, and if her testimony as to the provocation was true, her retaliation upon that occasion was not excessive. We have thus oath against oath, and in order to determine whether the libelant has sustained the burden which was upon him, of establishing by the weight of the evidence the averments of his libel, we must inquire whether the testimony of the respondent is in any respect corroborated. The libelant testified that on some of the occasions when his wife abused him her sister was present. That sister was called as a witness and directly contradicted the libelant, and testified to facts which so far from showing cruel and barbarous treatment upon the part of the wife tended to establish that the latter had merely made an effort to protect herself when attacked by the libelant. This witness also testified that the libelant was in the habit of swearing at his wife and calling her vile names. The libelant testified that Alice Ziegler had been present upon one occasion when his wife jumped up and shook her fist at him. Alice Ziegler was called as a witness by the libelant, and while she testified that the respondent had charged the libelant with infidelity, she also testified that she did not see the respondent offer any violence to her husband. The libelant testified that upon another occasion when his wife "jumped" upon him Mrs. Miller was there. The libelant called Mrs. Miller as a witness and she testified in reply to the question: "Q. Just state what the conduct of Mrs. Aikens was towards her husband? A. Well, I cannot say anything about it. She was always pleasant and kind when I was around." And

again, "Q. What sort of a temper had she? A. Well, she had a pretty good temper. The same as Howard" (the libelant). This witness on cross-examination testified distinctly: "Q. And during all that time you were there, Mrs. Miller, Mrs. Aikens was kind to her husband? A. Yes." It thus appears that the two witnesses referred to by the libelant in his testimony, as having been present when his wife abused him, directly contradicted his testimony as to this personal abuse, although each of the witnesses did testify that the wife had accused her husband of infidelity. The respondent called as a witness Florence Pierce, a servant who had lived in the house during the last five months that the husband remained in the house of his wife, who testified that the respondent had always treated the libelant kindly, but that she had seen the libelant on two occasions strike and choke his wife and frequently heard him swear at her. We have thus the testimony of this witness and that of the respondent and her sister, tending to establish that the husband frequently cursed his wife and called her vile names, choked her and struck her. The libelant in his testimony admitted that he had on one occasion struck his wife, on another pushed her back on the bed, and on a third occasion kicked her, or as he expressed it "took my foot and booted her on the hip," he also admitted that he was in the habit of swearing at her. We cannot avoid the conclusion that as to any allegations of violence or threats of violence, or personal abuse, or any other thing which could reasonably be held to be cruel and barbarous treatment or an indignity to the person (save and except only the fact that the respondent did charge the libelant with infidelity), the libelant failed to sustain his charges by the weight of the evidence. The respondent may at times have been irritable and provoking, she may have been disposed to insist upon her rights, but the evidence, including the libelant's own admissions clearly establishes that this respondent was

by no means gentle in his physical treatment of his wife. "We do not divorce savages and barbarians because they act as such toward each other. We can exercise no sound judgment in such cases without studying the acts complained of in their connection with the character of the parties:" Richards v. Richards, 37 Pa. 225; Schulze v. Schulze, 33 Pa. Super. Ct. 325; Biddle v. Biddle, 50 Pa. Super. Ct. 30.

We have then in this case the sole fact that the wife had charged her husband with marital infidelity, subsequently to October, 1909. It may be conceded that this charge was persisted in and frequently made, when the husband was present as well as when he was absent. When such a charge is made falsely, maliciously, abusively, persistently and continuously, with the intention of humiliating and insulting the conjugal partner, and without provocation addressed by the respondent to the libelant, such a course of conduct may in some cases constitute cruel and barbarous treatment and indignities to the person, within the meaning of the statute, but the mere making of the charge of infidelity by one party will not in all cases entitle the other party to a decree of divorce: Schulze v. Schulze, supra. The respondent testified that the libelant had, in September, 1908, told her that he had been criminally intimate with a woman in Philadelphia, and described the details of the offense. The libelant afterwards took the stand, to give testimony in rebuttal, and testified that he had actually told his wife that he had been criminally intimate with a woman in Philadelphia, and thus avowed his motive for making the statement to the respondent: "I told her this for the purpose that if she believed me that she would leave me, and that would be all there was to it." This was not the confession of a penitent seeking forgiveness. The statement was made with the intention that the wife should believe it, and in the hope that, believing it, she would leave him. He accomplished part only of his purpose, convinced his wife

that he was guilty, but she did not go away. The libelant testified that the statement which he had made to his wife was false, but he did not testify that he at any time after having made the statement to the wife had made any attempt to remove from her mind the conviction of his guilt which his false statement had implanted. After this the respondent was naturally disturbed in mind, and the discovery of the letters addressed to her husband and found in the drawer of his desk, in October, 1909, evidently made matters worse. We do not deem it necessary to comment on those letters, for we have the admitted fact that the husband told his wife he had been guilty of adultery and that she believed him. A man who makes such a statement to his wife, for such a purpose invites discord in his home; having sown the wind he is not in position to complain when called upon to reap the whirlwind. This libelant having intentionally led his wife to believe that he had been unfaithful to his marriage vows is not entitled to a divorce merely upon the ground that his wife had repeated the statement which he himself had made to her. "Indignities provoked by the complaining party are of course no ground of divorce, unless when the retaliation is excessive:" Richards v. Richards, supra.

The decree is reversed and the libel dismissed at the cost of the appellee.