## Dailey v. Dailey, Appellant.

Argued March 9, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Gerald G. Dolphin,* for appellant.

*Walter L. Schanz,* and with him *Leon M. Levy,* for appellee.

Opinion by Parker, J., July 14, 1932:

The libel in this divorce action alleges that the respondent, by cruel and barbarous treatment, endangered the life of the libellant and offered such indignities to her person as to render her condition intolerable and life burdensome. The lower court sustained the charge relating to indignities and entered a decree for the libellant, finding the respondent guilty of nagging, personal vituperation of his wife and the use of threats and language calculated to humiliate her, absence from

home and failure to adequately support his family. There was not any evidence produced which tended to show cruel and barbarous treatment as defined by the decisions and the decree must, therefore, rest upon the proof of indignities.

The libellant being required to file a bill of particulars, placed upon the record general charges of misconduct with an unusual scarcity of particulars. The evidence furnished at the hearing was of this same general character with a dearth of testimony describing particular acts of misconduct with dates and surrounding circumstances. Evidence given in this manner furnishes nothing more than the conclusions of the witnesses and does not supply proof of the charges.

The parties were married in 1914 and lived a fairly harmonious life for eight years, during which time there were born to them two children, a girl and a boy, who, at the time of the hearing, were respectively aged fifteen and eight years. After the boy was born, the libellant refused to have any more children. She has for several years declined to live with the respondent as his wife and they have occupied different rooms, although living in the same house up to the very day of the hearing. If we eliminate from consideration the general charges which are marked by an absence of specific occurrences, surrounding circumstances and dates and find all these facts for the libellant, there is not sufficient evidence, in our opinion, to warrant the granting of a divorce. So considering the evidence, the husband on one occasion threatened to strike his wife but did not do so; when in a heated argument he called his wife an "alley rat;" he accused her of coming home at night in an automobile with a man; the night after a son was born, he left the house without stating his destination and returned at a late hour; he attended dances, although he says that it was only for the purpose of hearing the music as he did not dance, and on one occasion accompanied a young girl

to a dance; and the wife followed her husband in an automobile when she saw him embrace and kiss a young lady. This testimony, for the most part, is uncorroborated and is denied by the respondent.

The facts with relation to an altercation which arose when Dailey complained of his wife coming in late at night in an automobile with a man illustrate the character of the testimony relied upon to support the decree. The husband did make such a complaint. The wife testified on this subject that she had to leave her home and go to the city hall for protection, that he accused her of coming home in an automobile with someone—she would not say who, because she did not know. Part of her language is as follows: "I returned home and he accused then, and I said that I would never have any use for Mr. Dailey from then on, to accuse me as he did; and he abused me so that the neighbors, a man and his wife next door, came in. ...... I went to the city hall. I remained there until the following morning and he came down and apologized." The wife failed to call as witnesses the neighbors who were said to have come in and did not account for their absence. The husband gives a different account of the affair which, in his language, is as follows: "What started the trouble, Mrs. Dailey came home about 5:30 in the evening. She said, "I am going out to dinner." She changed her clothes and went to town, and I went down town after her. About half an hour afterwards I seen her standing at the corner of Linden Street and Wyoming Avenue with Dr. Klein. I got in my car and went right home; I didn't speak to her in any way. That night she got home between ten after twelve and 12:30. I heard two cars bump on the street and I went out, and when I got back it was 12:30 and she was in the house. And I said, "This is a nice time to get in," and she said, "Yes." And I said, "Who was your boy friend down town?" "Oh," she says, "I seen you passing the

Cathedral," and I don't know just what the conversation was, and she says, "Go on, you dirty rat," and I says, "Don't judge everybody by yourself." And I walked in and went to bed, and that is all that was said. And I was in bed about ten minutes and I heard Catherine scream. She got out of bed and started to dress and started for city hall."

The strongest evidence furnished by the libellant was that her husband called her a rat or "an alley rat." There was some corroboration of this testimony but it occurred during heated arguments, for which the wife must bear a part of the responsibility. The use of such language to a wife is reprehensible, constitutes an indignity and, with other sufficient facts, might support a decree.

The evidence of the servant, Betty Watkins, wherein she claimed that the husband had at one time made improper advances to her, was not convincing. This was uncorroborated and denied by the respondent, who charged in turn that he had insisted upon the discharge of that servant for immoral conduct in his home. This charge was not covered by the bill of particulars and was received over the objection of counsel for respondent.

Libellant testified that, in company with a woman friend, she secured a taxi cab and followed her husband on two occasions. On one of these trips, she states that she saw her husband embrace and kiss a young lady in the car. It is significant, however, that, while she was corroborated in this by the taxi cab driver, her woman companion, an employee in the recorder's office of the county, was unable to corroborate her as she did not see it. The occurrence was denied by the respondent and four other witnesses. All the surrounding circumstances tended to sustain the contention of the respondent.

As we are required to do on all appeals from decrees for a divorce, except in cases where there is an issue

and jury trial, we have reviewed the testimony to determine whether it sustained the complaint of the libel. "We are called on to give careful consideration to the evidence to ascertain whether it is sufficient to establish the statutory grounds for a divorce, and this is for the reason as was said in Richards v. Richards, 37 Pa. 225, that a divorce ought not to be easily obtained, and the marriage relation should never be dissolved without clear proof of imperious reasons": Biddle v. Biddle, 50 Pa. Superior Ct. 32. The burden of proof is upon the libellant to establish every essential fact by clear proof of imperious reasons and it is our duty to scrutinize it with proper care: Buys v. Buys, 56 Pa. Superior Ct. 338; Aiken v. Aiken, 57 Pa. Superior Ct. 424; Heimer v. Heimer, 63 Pa. Superior Ct. 476.

The law does not define the word indignities and its meaning depends largely upon the circumstances of each case but it has been certainly determined by the appellate courts of this state that it must consist of such a course of conduct as is humiliating and degrading, inconsistent with the position of a wife, thereby rendering her condition intolerable and life burdensome. The indignities to her must not be provoked by her or such as could have been prevented or corrected by means reasonably within her power. "Indignities provoked by the complaining parties are of course no ground of divorce unless when the retaliation is excessive": Richards v. Richards, 37 Pa. 225, 228. The legislature of this Commonwealth has not made incompatibility a ground for divorce and there has been no disposition upon the part of the appellate courts to supply such a ground by a straining of the true meaning of the statutes. A happy marriage is dependent not only on the exercise of love and devotion of each party toward the other, but likewise a mutual consideration and forbearance. Our law recognizes the interest which the Commonwealth has in every contract of mar-

riage and the marriage relationship is not to be dissolved at the whim of the parties or for any other causes than are strictly within the grounds furnished by the statute.

We are of the opinion that there has been fault on the part of both parties and that each has some responsibility for the friction that has developed. As our cases hold, an indignity is not a ground for divorce but only such indignities as become a course of conduct, are intolerable and make life itself a burden will justify a court in dissolving the relationship. These are strong and forceful words but the meaning is not doubtful. The evidence fails to establish such a course of conduct and we are convinced that this record does not present the clear proof of imperious reasons, a preponderance of evidence, and strict proof of every essential fact that is required to warrant the entering of a decree of divorce.

The decree is reversed and the libel dismissed at the cost of the libellant.