## Picciano *v.* Picciano, Appellant.

Argued March 6, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*F. P. Slattery,* and with him *R. E. LaRossa,* for appellant.

*Richard L. Bigelow,* and with him *Frank A. Mc-Guigan* and *Pasco Schiavo,* for appellee.

OPINION BY PARKER, J., October 2, 1933:

In this action in divorce the respondent was charged with cruel and barbarous treatment and indignities to the person of her husband. The lower court, after hearing the testimony in open court, found that the charges were sustained and entered a decree for libellant.

As we are required to do in appeals from decrees in divorce where there is an issue without jury trial, we have reviewed the testimony to determine whether it sustained the complaint. The burden of proof is upon the libellant to establish every essential fact by clear and satisfactory proofs which it is our duty to scrutinize with proper care: Buys v. Buys, 56 Pa. Superior Ct. 338; Aikens v. Aikens, 57 Pa. Superior Ct. 424; Dailey v. Dailey, 105 Pa. Superior Ct. 461, 463, 161 A. 475. As there is involved the credibility of witnesses whom we have not been able to see or hear, and the parties, Italian by descent, are more emotional than the prevailing stock in this country and have been accustomed to standards of living different from those of an average American family, it becomes necessary for us to review the testimony with special caution and at some length in order that we may perform the duties imposed upon us by law.

On August 18, 1919, the libellant, a widower with eight children ranging in ages from two to fourteen years, married the respondent, a widow with one child five years of age. There were born of this marriage two children, Yolanda and Nicholas, of the ages of eleven and ten years respectively at the time the testimony was taken. The libellant, prior to their marriage, had been a resident of Hazleton and the respondent of New Jersey. After the marriage they made their home in Hazleton where they undertook to rear

three sets of children in one household. The husband testified that their married life was fairly harmonious for about five years, although there is evidence that there were serious difficulties before that time. It is clear that one of the serious sources of irritation which produced disagreements between this husband and wife was the abusive treatment by respondent of the libellant's children by his former marriage.

The testimony of the husband and his witnesses, if credited, established the facts that she continually used profane, abusive, vulgar, and filthy language in addressing her husband in the presence of others; that on numerous occasions she resorted to personal violence toward her husband, at one time scratching his face until it bled and striking him in a violent manner accompanied by abusive language; that several times she exhibited a revolver and threatened to kill her husband and certain of his children; that she accused him to others of infidelity and threatened to shoot him. At the hearing she admitted the authorship of a letter written in Italian and sent to her husband in which she severely berated him and demanded of him a money settlement. Some of the language and observations in the letter are too vile for repetition. Therein she referred to him as a traitor, a pimp, and a foul fool. Among other statements, the letter contained the following: "I am so indignant toward you that I would have the courage to shoot you at close range because you have been a damn fool, one dead with hunger, because the people have told me that you have been a 'hooker,' you have been a fickle fool and you believe you can do the same with me. Remember that I am a daughter of a whore, and since you have taken me, you have had some good fortune ...... I don't want to see you any more do what I tell you in this letter, I do not want anything only support for these two children because I cannot abandon them." While the parties have presented different translations of the

original, the excerpt we have given fairly well represents the nature of the letter whichever translation we adopt.

An altercation having arisen between a child of hers and one of his by the former marriage, she attacked his son who held her wrists to keep off her attack when she bit his arm until her mouth was filled with blood. It was necessary to call a physician to treat the wound. She struck one of the young boys with the leg of a chair and knocked him unconscious. She struck a small daughter of his with a broom stick and threw her down the cellar steps, the child being at the time about eleven or twelve years of age. She frequently threatened the children with a revolver which she exhibited on a number of occasions, threw a knife at one child, and struck another with a meat cleaver. She frequently beat the small children, struck one of them with a can of tomatoes, and shut one of them of tender age out of the house in the cold until after midnight when he was rescued by a neighbor. Chester testified that when he was about six years of age, the respondent, displeased at his failure to use the toilet, "put his head in the mire," and on another occasion put his hands on a hot stove. She denied these statements. The children gave specific instances of abuse and, in addition, testified that the same kind of abuse was administered regularly. Although the children were not as specific in reciting details as they should have been, their evidence indicated a continuous course of abuse.

The libellant is corroborated by his children as to practically all of his averments, and there is testimony of disinterested witnesses showing that she threatened to shoot her husband, exhibiting a revolver; that she attacked and physically abused her husband in the presence of a witness. There is also corroborative evidence as to her use of vile language, swearing, exhibitions of temper, and treatment of a cruel nature toward the children. A totally disinterested witness was

present when she abused the small daughter of libellant and put her in the cellar. A physician testified to the condition of the arm of a son who was badly bitten by respondent and stated that it was necessary for him to receive a number of treatments, the arm having lacerations and puncture of the skin. The husband testified that his health was seriously impaired by the treatment of the wife and in this respect he is corroborated by his family physician. He insists that it is impossible to live with her any longer and that he fears she will kill him and his children, and that he would rather commit suicide than to continue to live in the same household with her. There is uncontradicted evidence that the husband took the wife upon frequent automobile trips and bought her expensive clothing for their circumstances. We view this item of evidence not as a break in the continuity of abusive treatment and indignities upon the part of the wife, but rather as an attempt on his part to placate her and improve the living conditions which was not met with a proper response. We are unable to find in the testimony any evidence indicating that the husband's conduct provoked the wife and caused the outbursts of temper on her part. She admitted upon cross-examination that for the greater portion of the time he treated her kindly and affectionately and with consideration.

On the part of the respondent it is alleged that the husband was frequently intoxicated and that the physical encounters which she admits took place between them were the result of such intoxication. She charges that he brought a dissolute woman, an inmate of a house of ill fame, to their home much to her humiliation. This is denied by the husband who admitted that the woman was at the house but that she came there to make purchases from him. While the wife denied many of the allegations of the husband and his witnesses, she depended in part upon extenuating cir-

cumstances to justify her conduct. There was practically no corroboration of her own testimony except from members of her family and principally by that of her son by her first marriage. We were impressed with his testimony, and it has been given due weight. The young man is ambitious and has been working his way through college, but his testimony does not, in the main, contradict the libellant's evidence.

Our conclusion is that the testimony is clear and satisfactory that the respondent, by a continuous course of conduct toward the libellant, has destroyed his peace of mind, rendered his condition intolerable and life burdensome, and we fear that the husband's life would have been in danger had he remained in the household. Her outbursts of temper and conduct toward her husband and his children were not sporadic instances, but indicated a well settled hate. While the testimony on both sides may, at places, have been exaggerated and there were contradictions, there is strong corroboration of the husband's testimony by disinterested witnesses and practically no corroboration of the wife's testimony except by some of her own children.

The appellant contends that much of the evidence as to the abuse of the children was irrelevant and immaterial and that abuse of the children could not constitute an indignity to the person of the husband when it occurred in the absence of the husband. With this view we are unable to agree. It is true that indignities to a step-child might not constitute indignities to the person of the husband. Here, however, a family relationship existed where it was necessary to rear his children by a former marriage with two other sets of children in one household, and his children, we are forced to believe, were submitted to cruel and barbarous treatment to the knowledge of such husband. It is idle to suggest that this does not constitute an indignity to the husband. We cannot imagine a course

of conduct that would be more unbearable, intolerable, and injurious to the health of a husband, a working man of comparatively limited means, than to be compelled to live in a household where his young children were submitted to the treatment that was accorded these children. In fact, the conditions would have been more tolerable if the outbursts of temper had been directed toward the husband. The Commonwealth has an interest in the maintenance of the family relationship and the rearing of children in an atmosphere conducive to their welfare. This is the primary reason for the interest of the state in all divorce proceedings. We are convinced that the treatment of these children by the wife was an indignity toward the husband.

We are persuaded that the respondent has, by a continuous course of conduct, offered such indignities to the person of the libellant as to render his condition intolerable and life burdensome. As was said by Judge GAWTHROP in Hare v. Hare, 95 Pa. Superior Ct. 66, 68, if the "wife was guilty of an unjustifiable course of conduct, which so grievously wounded the mental feelings of her husband as to utterly destroy his peace of mind and seriously impair his bodily health," this conduct would amount to "indignities to his person which rendered his condition intolerable and life burdensome" and he would be entitled to a decree in divorce. The lower court had an opportunity to see and hear the parties, as the testimony was taken not through a master but in open court, and after considerable deliberation arrived at the conclusion that there was ample ground to support the libel. This is entitled to consideration by us.

The decree is affirmed, costs to be paid by the appellant.