### Mathias v. Mathias, Appellant.

Submitted April 10, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John A. Berkey,* and with him *Clarence L. Shaver* and *Daryle R. Heckman,* for appellant.

*Joseph Levy,* and with him *Archibald M. Matthews,* for appellee.

OPINION BY CUNNINGHAM, J., October 3, 1934:

In this divorce proceeding the husband obtained a decree against his wife upon the ground that over a period of years she offered such indignities to his person as to render his condition intolerable and his life burdensome. The present appeal is by the wife from that decree.

Although the libel was filed in March, 1931, the parties effected a reconciliation and lived together from July 2, 1931, until September 9, 1932. Upon a second separation, the case was proceeded with. As marriage is one of the most sacred of human relations, it "should never be dissolved without clear proof of imperious reasons": Kerr v. Kerr, — Pa. Superior Ct. —, 174 A. 820, and cases there cited. In this case it is incumbent upon us to examine the evidence de novo, and determine whether the court below reached a correct conclusion: Nacrelli et al. v. Nacrelli, 288 Pa. 1, 136 A. 228; Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350; Langeland v. Langeland, 108 Pa. Superior Ct. 375, 164 A. 816.

It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition, of the parties: Richards v. Richards, 37 Pa.

225; Aikens v. Aikens, 57 Pa. Superior Ct. 424; Sharp v. Sharp, 106 Pa. Superior Ct. 33, 161 A. 453. It is well settled, however, that it is not with isolated occurrences that the law concerns itself in determining whether a divorce should be granted upon this ground, but only with indignities, so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden: Esenwein v. Esenwein, supra; Dailey v. Dailey, 105 Pa. Superior Ct. 461, 161 A. 475; Sharp v. Sharp, supra. Such indignities, we have frequently said, "may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient": Breene v. Breene, 76 Pa. Superior Ct. 568; Koontz v. Koontz, 97 Pa. Superior Ct. 70; Sharp v. Sharp, supra.

With these principles in mind, we have attentively considered the testimony and have arrived at the conclusion that it does not disclose such a continuous course of unprovoked conduct upon the part of appellant as to justify the decree. The parties were married at Cumberland, Maryland, in 1914; appellant was then only fifteen years of age and libellant twenty-four. For ten years the marriage seems to have been normally successful and happy, and four children were born. Except for a few months in Cambria County, they have lived in Somerset County ever since their marriage, and for the last ten years near Holsopple, where libellant is a mine superintendent in charge of three mines. The earliest incident of which libellant complains occurred in 1924. He testified that on three occasions during that year he saw appellant in the company of a man to whom he objected; that upon each occasion he remonstrated with her and she

promised not to have anything to do with the man. Except for the profanity with which libellant says appellant, on these occasions, answered his charges of infidelity, it is apparent that these alleged incidents do not support the ground set out in the libel. Appellant denies she was with this man, and, as to the profanity, asserts it was provoked by libellant's false accusations. Indignities provoked by the complaining party are not grounds for divorce unless the retaliation is excessive (Richards v. Richards, supra; Kissinger v. Kissinger, 83 Pa. Superior Ct. 231), and we do not so consider appellant's conduct here. Libellant offered no testimony substantiating his charge that appellant had been unfaithful, and admitted that it was an isolated incident and that subsequently they got along fairly well until 1928.

The greater portion of libellant's allegations relate to occurrences during the period from 1928 until the first separation in February, 1931. During this period, according to the testimony of libellant and some of his witnesses, appellant so reviled him, particularly at night, that on twelve or fifteen occasions he had to leave the house and go to Johnstown to sleep; she charged him with improper relations with female employes and other women and asserted that the trips which he made on business were really for the purpose of associating with loose women; without notice, she left the home on five different occasions for days at a time and refused to say where she had been; she nagged him, complained of the food which he supplied from his store, accused him of cheating at cards, and aired their family troubles among the neighbors; she made the visiting officials of his company feel unwelcome in his home, and treated him with contempt in the presence of guests. This testimony, however, was seriously lacking in that definiteness which is requisite in cases of this kind. The witnesses who testified to

appellant's conduct in the home, and to her abuse of him to neighbors, gave merely their inferences and not the facts upon which their conclusions were based. This is not enough. General accusations of bad temper, of a nagging disposition, and of disagreeable conduct are of no value unless accompanied by the actual facts upon which these assertions are based: Ford v. Ford, 67 Pa. Superior Ct. 350; Abbott v. Abbott, 75 Pa. Superior Ct. 483, 504; Esenwein v. Esenwein, supra.

As to appellant's absences from home, the only evidence offered was that of libellant himself. She, on the other hand, denied all but three of these incidents, and stated that each time they were the outgrowth of quarrels in the home, and that libellant ordered her to leave. We are the more inclined to credit her account in view of libellant's testimony that most of their quarrels grew out of petty matters which caused irritation; that each would then cast up to the other past occurrences, and, one word leading to another, the quarrel would sometimes attain violent proportions. These instances of serious quarrels, (including the times libellant spent the night in Johnstown) occurring, as they did, occasionally and participated in by both parties, do not amount to a manifestation of that malevolent disposition and "settled hate and estrangement" upon the part of appellant which libellant was required to establish in order to maintain his action: see Altwater v. Altwater, 81 Pa. Superior Ct. 359.

Libellant also failed, we think, to support his accusation that appellant continually made the superior officials of his company unwelcome to his home. He called as his witness the general manager, Mr. Wilson. Although this witness stated that on one occasion appellant said they ought to talk over their business at the hotel, and upon another, "intimated" that on the

business trips he and libellant took they entertained girls, he also testified that "About the home they seemed to get along, I would say, about on the average of any man and wife." Mrs. Wilson was called by appellant; she testified that on the numerous occasions she had been a guest at libellant's home and on an automobile trip which she and her husband had taken with the parties, appellant's attitude and manner toward her husband were consistently agreeable and that appellant did not make libellant's friends feel unwelcome in his home.

It would serve no good purpose to enter into a detailed discussion of all the evidence. Witnesses on each side attributed shocking profanity and abusive language to each spouse. As to libellant's uncorroborated assertions that appellant accused him of infidelity, she denied making all but one of these accusations, and that one she explained—and was corroborated—by saying that she had seen her husband come alone out of that woman's home at a time when the latter's husband was at work. It is sufficient to say that the evidence for the most part either lacked that definiteness which is required in cases of this sort, or related to isolated incidents, which, for the reasons already stated, cannot be considered as establishing the ground of divorce here alleged. Moreover, after the libel was filed the parties effected a reconciliation and lived together, apparently without serious quarrels, until the day of the final separation in September, 1932. Libellant, by reason of his conduct on that occasion, was tried in the court of quarter sessions and convicted of assault and battery upon appellant. For six months after the reconciliation, libellant would not eat at home, which he explains by saying he feared his wife would poison him, but he failed to offer any evidence which would even tend to justify such an apprehension. He does not deny that during this period he

associated with another woman; the record, however, is barren of evidence indicating serious misconduct on his part. Again, during the separation preceding this reconciliation—which separation lasted about five months—appellant preferred a charge of desertion and non-support against libellant and secured an order. Yet, after all these occurrences, the parties succeeded in living together for more than a year without serious trouble, at least so far as the evidence shows. Most of the incidents upon which libellant bases his case occurred before this reconciliation, and, while condonation is not a technical defense here, the fact that a reconciliation was effected should be given consideration in determining whether the preceding events were such as to render libellant's condition intolerable and his life burdensome.

A careful examination of the entire record convinces us that the unfortunate difficulties of this marriage, which clearly is not a happy one, have been caused by jealousy, nagging and intemperate language on both sides; we cannot say that either is the "innocent and injured spouse." As libellant's evidence was not sufficient, either in quantity or quality, to meet the requirements of the law, the assignment of error to the entering of the decree must be sustained.

Decree reversed and libel dismissed at costs of appellee.