## Sleight *v.* Sleight, Appellant.

Argued April 25, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William T. Connor,* with him *John R. K. Scott,* for appellant.

*Grover C. Ladner,* of *Ladner & Ladner,* for appellee.

OPINION BY RHODES, J., October 7, 1935:

Roland E. Sleight obtained, in the court below, a decree of absolute divorce from his wife, Bessie Sleight,

on the ground of indignities to his person. From that decree the wife appealed.

The original libel was filed on November 18, 1927, setting forth, as grounds for divorce, cruel and barbarous treatment and indignities to the person. An amendment to the libel was filed on March 20, 1928, and adultery added as a ground for divorce. The respondent filed an answer to the libel and also to the amended libel. A bill of particulars, an amended bill of particulars, and answers thereto were filed. The case was heard by a master, who held forty-five meetings over a period of approximately three years. The master filed his report on June 29, 1934, in which he recommended a divorce for the libellant on the ground of cruel and barbarous treatment and indignities to the person. The master found that the charge of adultery had not been sustained. On July 6, 1934, the respondent filed exceptions to the master's report. The court below sustained respondent's exceptions as to the master's finding and conclusion on the charge of cruel and barbarous treatment, and approved the master's finding and conclusion as to the charge of indignities to the person. On December 4, 1934, the court entered a decree of absolute divorce in favor of the libellant, Roland E. Sleight, and against the respondent, Bessie Sleight.

The case was vigorously contested; and at the forty-five hearings before the master, the libellant produced twenty-nine witnesses, and the respondent seventeen. The record is most voluminous.

There having been no jury trial in this case, we are required to consider all the evidence and express an independent conclusion thereon. Nacrelli et al. v. Nacrelli, 87 Pa. Superior Ct. 162, 288 Pa. 1, 136 A. 228.

We are of the opinion that the master and the court below were correct in their conclusion that the testimony relating to respondent's adultery was not such as

would warrant the granting of a divorce on this ground. No good purpose could be served by relating the sordid details of the testimony in this regard. Although we find some evidence in the record of acts that might be construed as coming within the legal meaning of the term "cruel and barbarous," we do not think it is sufficient in itself to warrant the granting of a divorce on the ground of cruel and barbarous treatment. However, such conduct and threats by the respondent may properly be considered, in connection with other conduct, under the charge of indignities to the person.

This leaves for our consideration the charge in the libel that the respondent offered such indignities to the libellant's person as to render his condition intolerable and life burdensome.

Indignities to the person constitute a separate and distinct ground for divorce, under par. (f) §10, of "The Divorce Law" of May 2, 1929, P. L. 1237 (23 PS §10 (f)). The principles applicable thereto have often been stated. "It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition, of the parties: Richards v. Richards, 37 Pa. 225; Aikens v. Aikens, 57 Pa. Superior Ct. 424; Sharp v. Sharp, 106 Pa. Superior Ct. 33, 161 A. 453. It is well settled, however, that it is not with isolated occurrences that the law concerns itself in determining whether a divorce should be granted upon this ground, but only with indignities, so repeated and continuous as to constitute a course of conduct which renders the complaining party's condition intolerable and life itself a burden: Esenwein v. Esenwein [312 Pa. 77, 167 A. 350]; Dailey v. Dailey, 105 Pa. Superior Ct. 461, 161 A. 475; Sharp v. Sharp, supra. Such indignities, we have frequently said, 'may consist of vulgarity, un-

merited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient': Breene v. Breene, 76 Pa. Superior Ct. 568; Koontz v. Koontz, 97 Pa. Superior Ct. 70; Sharp v. Sharp, supra": Mathias v. Mathias, 114 Pa. Superior Ct. 444, 446, 174 A. 821, 822.

In the case of Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350, affirming the judgment of this court, 105 Pa. Superior Ct. 261, 161 A. 425, the pertinent principles of law were also stated as follows: " 'It is not of a single act that the law speaks in the clause under which this case falls; but of such a course of conduct or continued treatment as renders the [husband's] condition intolerable and [his] life burdensome ...... Never ought divorces to be easily obtained, for marriage is the most sacred of human relations, and should never be dissolved without clear proof of imperious reasons ...... Indignities provoked by the complaining party are of course no ground of divorce unless when the retaliation is excessive.' (Citing cases). 'Our statute is a municipal regulation for the protection of the community as well as the wife' or husband: McDermott's App., 8 W. & S. 251, 256.

"In considering whether there is that 'clear and satisfactory evidence of the wrong which the law treats as justifying cause for a divorce ...... the court must be informed what the respondent has done; not what witnesses may conclude, or what they may regard as the character of the conduct': Edmond's App., supra [57 Pa. 232]. General expressions 'are of no value unless accompanied by the actual facts on which these assertions are based. We are entitled, in the consideration of the case, to have the particulars as to the words spoken or the things done that constituted the cause of action alleged': Ford v. Ford, 67 Pa. Superior Ct. 350, 352;

Bishop v. Bishop, 30 Pa. 412, 415." See Conrad v. Conrad, 112 Pa. Superior Ct. 198, 200, 170 A. 342, 343.

We have examined the evidence as submitted in this case in the light of these principles; and we have applied these tests to the testimony of the many witnesses, both for the libellant and the respondent, in this case. The following are the salient facts, as shown by the testimony of libellant and his witnesses, relative to the charge of indignities: The libellant and the respondent were married on December 26, 1923. At that time the libellant was thirty-nine years of age, and the respondent twenty-one. After living together for fourteen months, mostly in hotels and apartment houses in Philadelphia, they separated on or about February 16, 1925.

After the marriage, the libellant and respondent went to Florida. Their troubles began on this trip and continued for the fourteen months during which they lived together.

On their trip to Florida, immediately following their marriage, the respondent began to accuse libellant of marital infidelity; said she had made a mistake in marrying him, and should have married another; and called him vile names. The stay in Florida was cut short on account of respondent's conduct.

Upon returning from Florida, they went to the Pennsylvania Hotel in Philadelphia. Here there was a renewal of the accusations of infidelity on the part of the libellant. During this time the respondent would say that the spirits had come; that she was some sort of a spiritualist; that she found out what the libellant was doing during the day; and that he had improper relations with other women. On May 25, 1924, about four o'clock in the morning, the respondent came home somewhat intoxicated. She began accusing libellant of infidelity, and obtained a loaded revolver from the bureau drawer, stating that she was going to kill him provid-

ing he did not confess to immoral relations with a former woman acquaintance by the name of Mrs. Miller. The libellant obtained the gun from the respondent and threw it out the hotel window, where it exploded. The next day the respondent left and went to the home of her mother. The hotel management, on account of the disturbance, ordered them to vacate. The respondent asked the libellant to take her back, which he did on May 30, 1924, and they then lived together at the Hotel Normandie. On June 12th the respondent again began accusing the libellant of immorality with women and called him various vile and opprobrious names, which she had frequently used, and, in addition, threw various things at him which she obtained from the bureau, scratched him, and tore his clothing. After this occurrence she packed her clothes and again went back to her mother.

During the latter part of June, she sought to resume marital relations with the libellant, and he consented to take her back, providing she would conduct herself properly. They then took up their abode at the Royal Apartments. Here the respondent frequently accused the libellant of immorality with women, used profanity, and called him vile names. On at least one occasion, the libellant was obliged to call the watchman to quiet the disturbance. The libellant spoke to the respondent relative to her improper conduct, and she stated that she was tired of living in hotels and apartments; whereupon libellant obtained a home on North Fairhill Street, Philadelphia, where they lived until February 16, 1925. On Christmas Eve, 1924, the respondent accused, in the presence of others, the libellant of immoral relations with different women. On other occasions, while living on North Fairhill Street, she insulted the libellant in the presence of others, jerking the telephone receiver out of his hands, and stating to those present that the libellant was going to leave as he had an ap-

pointment with other women. The language which the respondent often used toward the libellant in their home was heard on many occasions by the maid who testified for the libellant. On February 16, 1925, the libellant returned from a trip to Canada. As he entered their home, the respondent confronted him with a revolver. She demanded a confession to the effect that he was intimate with a lady employee by the name of Miss Penton, and said she was going to kill him and herself. As the libellant obtained the gun from the respondent, it was discharged, and the bullet went into the base of the wall. On this occasion the respondent wrote the following note which was introduced in evidence: "I murdered myself. Edd begged me for the gun. He wants Penton." The libellant did not live with respondent thereafter.

During the time that the parties were living together, the respondent frequently spoke to others about the libellant's alleged misconduct. She repeatedly called the employees of his company and asked them where he was, telling them that he was probably out having improper relations with other women. She continued this conduct toward the libellant down to and after the filing of the libel in this case.

We are of the opinion that the respondent's conduct, as narrated by the libellant and his witnesses, is sufficient to warrant a decree in divorce on the ground of indignities to the person. See Krupp v. Krupp, 95 Pa. Superior Ct. 474.

The libellant's testimony relative to the conduct of the respondent during the fourteen months they lived together is corroborated in many details by various witnesses. The weight of the evidence is with libellant.

The respondent generally denies the allegations of the libellant, but presents no worthwhile corroborative proof. The testimony of the respondent seems to confirm the libellant's description of her disposition and

intolerable attitude. In giving consideration to the respondent's denials and to her story generally, we agree with the master when he says: ".... that every time respondent's story can be testified to by other witnesses, her story has been contradicted in material particulars." Frankly, we are not impressed with the testimony of the respondent or with that of most of her witnesses.

Much of the testimony contained in the voluminous record relates to events which occurred after the filing of the libel in divorce.

The real dispute in this case is whether there has been presented a clear and satisfactory case by the libellant on which the determination of the court may be confidently rested, or whether there is such a doubtful balance of the evidence that a decree could not be supported. The burden of proving his case by clear and satisfactory evidence is upon the libellant, and there must be a preponderance of the evidence in libellant's favor. Twaddell, Jr. v. Twaddell, 95 Pa. Superior Ct. 429; Picciano v. Picciano, 110 Pa. Superior Ct. 189, 168 A. 488; Dailey v. Dailey, 105 Pa. Superior Ct. 461, 161 A. 475; Lomax v. Lomax, 87 Pa. Superior Ct. 543; Altwater v. Altwater, 81 Pa. Superior Ct. 359.

From an examination of the testimony, we are of the opinion that the libellant and his witnesses have shown by a clear preponderance of the evidence that the respondent has, by a continuous course of conduct, offered such indignities to the person of the libellant as to render his condition intolerable and life burdensome, and that he is entitled to a decree of divorce on this ground.

Decree of the court below is affirmed.