Shank *v.* Shank, Appellant.

Argued November 17, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*John McD. Sharpe,* for appellant.

*Edmund C. Wingerd,* for appellee.

OPINION BY PARKER, J., January 27, 1938:

The libel in this divorce case charged that the respond-
ent committed adultery with one Charles I. Selser, about
May 10, 1933. This was denied by the respondent, and
she made a counter charge of adultery against the libel-
lant. Assuming the duty placed on this court to deter-

mine whether the complaint has been proved by clear and satisfactory evidence, as there was not a jury trial *(Buys v. Buys,* 56 Pa. Superior Ct. 338; *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 463, 161 A. 475), the majority of this court are of the opinion, after scrutinizing the proofs with care, that the charge made in the libel was sustained.

We will first dispose of the counter charge of adultery raised by an amended answer of the respondent. Considerable evidence was offered in support of the charge, but when given due consideration it came far from supporting the respondent's charge. Certain facts were shown which might give rise to suspicion, but we agree with both the master and the court below that there was a complete failure in this proof. In fact, that defense was not seriously urged on the argument of the case and no good purpose will be served by discussing the details.

The libellant produced two witnesses, young men, who testified that they saw the respondent have sexual intercourse with Selser in the rear of a furniture store, the corespondent's place of business. The respondent and corespondent denied the facts alleged by these two witnesses and asserted that they had at no time had such intercourse with each other. The only testimony offered as corroboration was to the effect that Selser called at the home of Mrs. Shank on two occasions during the daytime and was admitted by her to the house, that she was a frequent visitor at Selser's store, and that Selser and the respondent were seen one evening about dusk on the driveway adjoining her home. It was admitted that Selser was at her home on two occasions, but it was claimed that he was there on proper business, once to measure a room for linoleum and at another time to inspect a chair which he repaired. The immediate parties also denied that she was at the store frequently or that she was in the driveway with Selser on the occasion mentioned and produced other testimony tending to show that she was not frequently in the store. The corroborative evidence

was of little value as tending to show anything more than that the parties were acquainted and had opportunity to commit the acts alleged. While it furnished evidence of opportunity, it furnished no evidence of itself of adulterous practices or an adulterous inclination. If the libel is to be sustained, it must be by virtue of the testimony of the two witnesses to whom we have referred.

Glenn Divelbiss and John H. Atherton testified to facts which, if believed, established beyond question that Mrs. Shank and Selser did have sexual intercourse about May 10, 1933 in a rear room of Selser's place of business. A divorce must be granted unless we conclude that these two young men testified falsely.

Divelbiss lived with his family in an apartment which was part of the building in which Selser's store was located and the two tenements had a common cellar. Divelbiss testified that he was standing on his front porch about 2:30 in the afternoon when he saw Mrs. Shank enter Selser's store, that a few minutes later in company with his friend Atherton, another young man, he went to the cellar, that he heard the respondent and Selser talking in the front office about the libellant. He stated that he knew their voices and that he heard Selser saying "Don't confess to anything," and that then he heard Mrs. Shank say "Supposing we would be caught" to which Selser replied "Well, this has been going on for the past two years and we haven't heard anything about it." We will not rehearse all the sordid details except to say that he further testified that the parties moved to a room in the rear where furniture was exhibited, that he looked through a hole in the floor, that the hole was about eight inches in diameter, that he saw the body of the respondent exposed from her hips down and that he saw them have intercourse with each other, but that he could not see the face of either. The testimony of Atherton was substantially to the same effect. If the testimony of the principals is accepted it would be

necessary to dismiss the libel. On the other hand, if we accept the testimony of the two disinterested witnesses, there is no course open to us but to sustain the decree.

The principals were interested parties and the witnesses were disinterested for there is not a scintilla of evidence to show any motive on the part of the witnesses for giving false testimony or any enmity or hard feeling toward the respondent or corespondent, or that there was any reason for bias in favor of the libellant. The only ground upon which their story was attacked is that it was improbable. In support of this it is urged that the witnesses could not see what they said they saw through the hole in the floor, that the parties would not have chosen the floor as a couch and that it is unreasonable to assume that the alleged occurrences all took place during business hours when customers had access to the store.

In answer to this it may be said that respondent failed to show by any satisfactory evidence just what view could be had from the cellar. There was full opportunity to hear what the witnesses say they heard and to see the occurrences which they described as the young men were within a foot of the location of the parties. It does not appear what covering or other material may have been placed on the floor as it would be difficult, if not impossible, to see such an article from the cellar. Finally, the offense is charged to have been committed in a rear room of the store where furniture was on exhibition. While the matters urged by appellant are all proper for consideration, it is a matter of common knowledge that those with an adulterous disposition do not in all respects behave normally. As the learned judge of the court below pointed out, when passion rules, common sense in many cases departs.

We are asked, as we have indicated, to assume that these disinterested witnesses were guilty of a heinous

crime, wilful and corrupt perjury, without anything in the record to discredit them. The limit which they placed upon what they were able to see would seem to be in keeping with the physical facts. Perhaps these young men, due to their age, lack of experience and inability to express themselves, did not furnish as intimate details of the affair as would be expected from one of more mature years, but the testimony was about what we would expect from grown boys. We have read and re-read the testimony with a view to testing its accuracy and we are unable to come to the conclusion that the testimony so given was false. On the other hand, the testimony of the respondent and Selser was not convincing as we get it in cold type. As we are dealing with a pure question of fact, no good purpose would be served by making a further analysis of the testimony.

We have eliminated from consideration in arriving at our conclusion the testimony of the husband with relation to finding a note in which the wife is alleged to have confessed her delinquency. In our opinion this evidence neither adds to nor subtracts from the force of the other evidence.

While the findings of a master in a divorce proceeding are entitled to consideration by the court, "his findings have not the conclusiveness of those of an auditor or a master in chancery": *Rommel v. Rommel,* 87 Pa. Superior Ct. 511, 512; *Reinhardt v. Reinhardt,* 111 Superior Ct. 191, 193, 169 A. 408. The judge of the court below, after a careful analysis of all the evidence, has expressed his views supporting the decree in an able opinion and he came to a different conclusion than the master. We agree with the court below.

Decree affirmed.

DISSENTING OPINION BY KELLER, P. J.:

The decree in this case rests wholly on the testimony of two prurient-minded boys. The story told by them

is not only improbable, in view of all the attending circumstances, but, in my opinion, it is impossible that they could have seen what they alleged they saw by looking up through a small round hole in the floor directly over their heads and several feet above them. It simply could not have been done.

The master, an experienced trial lawyer, who saw and heard them testify, did not believe them; neither do I.

I would sustain the master and dismiss the libel.

Judge JAMES and Judge RHODES concur in this dissent.