Ganunis, Appellant, *v.* Ganunis.

Argued March 21, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, MONTGOMERY, and FLOOD, JJ. (WATKINS, J., absent).

reargument refused July 15, 1963.

*William D. Balitas,* for appellant.

*Leon H. Kline,* with him *Isadore E. Krasno,* for appellee.

Opinion by Wright, J., June 12, 1963:

On June 27, 1960, Faith A. Ganunis filed a complaint in divorce a.v.m. against her husband, Albert A. Ganunis, on the ground of desertion. Following the determination of rules for a bill of particulars, and for alimony pendente lite and counsel fees, a master was appointed on January 14, 1961. After taking testimony at three hearings, the master filed a report on December 11, 1961, in which he recommended that a divorce be granted. On December 10, 1962, the court below sustained exceptions filed by the husband and dismissed the complaint. This appeal by the wife followed.

The parties were married on October 23, 1957, in New Philadelphia, Schuylkill County. The wife is presently thirty years of age and the husband is a year or so older. Prior to the marriage the wife had resided with her parents in Auburn, Schuylkill County, and the husband had resided with his aunt in New Philadelphia. After their marriage the parties lived together in an apartment in Bridgeport, Montgomery County,

where the husband was employed by the Reading Railroad Company. On January 8, 1958, the husband was furloughed, and the parties moved back to Schuylkill County, where they lived for a short time with the wife's parents. On February 8, 1958, following an argument at a wedding reception, a separation occurred, and the parties have not cohabited since. The wife was then pregnant. The child was born October 9, 1958, a little girl, and is presently in the wife's custody. At the time of the separation, the husband told the wife to take the furniture and he would take the automobile. "That will make it about even". When the husband went to the home of the wife's parents to get the car, his wife told him that she had put his clothing in the automobile. It is not the wife's contention that there was a desertion by the husband at that time. Her case is based upon an incident occurring on June 20, 1958, which will be hereinafter detailed.

On February 23, 1958, the parties had a conversation about living together again, and the wife said she would be willing to do so if the husband provided a home for her. It was agreed that they should visit the wife's minister, Reverend C. A. Steigerwalt, for marriage counseling. On this visit, the wife repeated that she was willing to live with her husband provided he would make a home for her. Reverend Steigerwalt testified that the husband "was only concerned about himself. He said Faith's people could take care of her, and he'd take care of himself". The husband himself testified as follows: "Q. Did you ever pay your wife support for herself or the baby? . . . A. I did not. They have enough money themselves. They ought to support me."

On March 11, 1958, the wife filed a complaint in divorce a.v.m. on the ground of indignities. The master in that case resolved the issue of credibility in favor of the wife, and recommended that a divorce be granted. The court below sustained exceptions filed by the hus-

band and dismissed the complaint. The wife did not appeal, so that the proceeding on the ground of indignities is not before us. However, it should be here noted that the time during which the indignities action was pending was properly included by the wife in computing the statutory period of desertion in the instant proceeding: *White v. White,* 185 Pa. Superior Ct. 141, 138 A. 2d 162. And see *Colin v. Colin,* 190 Pa. Superior Ct. 125, 151 A. 2d 801.

The master in the case at bar also resolved the issue of credibility in favor of the wife, and found that she was the innocent and injured spouse. Although counsel for appellant devotes two sections of his brief to these questions, the court below did not take issue with the master in either regard. We may therefore assume that it agreed with the master on these points, and it becomes unnecessary to discuss them. Indeed, with regard to his wife's conduct, the husband testified as follows: "Q. Did you have any reason to complain about what she did while you were living together? A. No, I never had any reason".

This appeal does not involve any new or unusual legal proposition. While there must be a concurrence of intent to desert and absence, it is not necessary that the intent to desert must arise precisely at the time of the separation. See Freedman, Law of Marriage and Divorce, (2d Ed.) Section 225. Appellant's pivotal contention is that she carried her burden of proof to establish that the original separation did "ripen into wilful and malicious desertion on June 20, 1958, when the defendant told plaintiff . . . that he would never live with her". In this connection the pertinent factual findings of the master, fully supported by the record, are as follows:

"28. That on June 20, 1958 at or about noon time plaintiff went to the 5 & 10¢ store in Schuylkill Haven. After leaving the store and crossing the street, defend-

ant called to her but plaintiff ignored him because she was afraid of him, and entered her automobile which was parked across the street from the store. Defendant attempted to enter the car, pounded on the doors and windows of the car, but plaintiff refused to open the doors or lower the windows and drove off along the Brommerstown Road with the defendant pursuing her in his automobile.

"29. During the chase defendant forced plaintiff off the road several times until finally he forced her automobile against the guard rails and plaintiff was forced to bring her automobile to a stop. Defendant left his automobile and went back to the automobile of the plaintiff where he banged on her car windows, threatening plaintiff in a loud and violent manner stating that he had been waiting a long time for her and that now he got her; that she was no damn good and that the baby was not his, and that plaintiff was going straight to hell.

"30. At the time the defendant stopped plaintiff's automobile, he accused his wife of carrying someone else's baby; that she was no good; that she was causing him disgrace; that he wasn't going to live with her; that he wished that he had never married plaintiff; that he didn't care about the baby or about the plaintiff; that he was going to make life miserable for plaintiff.

"31. On June 20, 1958 when the defendant stopped the plaintiff's automobile, the defendant told his wife there wasn't any hope of them getting back together and he wanted plaintiff to go her way and he would go his way; that she was a no good bum . . .

"33. Since June 20, 1958 defendant has not made any attempt or offer to make a home for himself and his wife and child; nor has he made any offer of reconciliation to his wife".

The difficulty with the decision of the lower court lies in the fact that it is based on the erroneous impression that appellant in the case at bar is relying on the theory of constructive desertion. This appears in the following excerpt from the opinion below: "The plaintiff therefore, contends that, that which happened on June 20, 1958 was constructive desertion. The theory of constructive desertion is set forth in the case of Jeanette v. Jeanette, 196 Pa. Superior Ct. 295, 300, wherein the Court held as follows: 'Constructive desertion occurs when either one of the two acts occur, (1) being put out by force or justifiable fear of immediate bodily harm, or (2) being locked out against the will or without the consent of the innocent spouse.' Neither of the above situations exists in this case". It is clearly evident to the contrary, as previously indicated, that appellant's theory in the instant case is that, assuming arguendo an initial consensual separation, it was changed into a desertion by virtue of the husband's conduct on June 20, 1958.

It is a fair inference from the testimony in this record that, during the period from February 8, 1958 to June 20, 1958, the appellant maintained hope that marital relations might be resumed. However, the events on the latter date brought to an end any mutual consentable separation which may have existed prior thereto. We agree with the master that a wilful and malicious desertion by the husband commenced on June 20, 1958, and continued for the required statutory period. Even if an original separation is consensual, it ripens into a desertion when the one spouse makes it clear that under no circumstances will he or she join the other: *Rhine v. Rhine,* 192 Pa. Superior Ct. 146, 159 A. 2d 544. As indicated in the quoted findings of the master, appellant was informed by her husband that he did not intend to live with her, and that there was no hope of a reconciliation.

In *Bello v. Bello,* 198 Pa. Superior Ct. 73, 181 A. 2d 734, the parties were living separate and apart. The husband asked the wife to "come back". She made the following reply: "No, I am not coming back, I do not love you. I like it the way it is now, and I want it to stay this way". The lower court held that this statement amounted to a termination of any consent by the husband to the separation, and the granting of a divorce on the ground of desertion was affirmed by this court. In *Dodson v. Dodson,* 150 Pa. Superior Ct. 437, 28 A. 2d 821, the wife's original departure from the home lacked the elements of a wilful and malicious desertion. However, her continued remaining away culminated in a letter in which she made it clear that she was through with her husband. It was held that this was such a definite repudiation of the marital relationship that the husband was under no further duty to seek a reconciliation, and that a wilful and malicious desertion occurred. Similarly, the husband in the case at bar told the wife-appellant that he did not intend to live with her, and that there was no hope of them getting together again.

We are not in accord with the husband's contention that the separation subsequent to June 20, 1958, continued to be consensual. There is no evidence whatever in this record which would indicate that the wife continued to consent to the separation. Once the wilfulness and maliciousness of the separation had been shown, the duty to come forth with evidence of consent was upon the husband: *Sacks v. Sacks,* 172 Pa. Superior Ct. 543, 94 A. 2d 147. It was not incumbent on the wife, the innocent spouse, to further seek reconciliation, and her failure to do so did not amount to consent: *Procopio v. Procopio,* 174 Pa. Superior Ct. 157, 100 A. 2d 115.

The decree dismissing the complaint is reversed, and the record is remanded to the court below with the direction that a final decree in divorce be entered.

WATKINS, J., took no part in the consideration or decision of this case.