## Smith *v.* Smith, Appellant.

Argued June 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Melvin Schwartz,* with him *Alexander Cooper,* and *Cooper, Goodman & Schwartz,* for appellant.

*Harry H. Rosen,* for appellee.

OPINION BY JACOBS, J., September 16, 1965:

This is an appeal by a wife from the action of the court below in granting her husband a divorce.[1]

---

[1] The record indicates that a final decree was entered on October 21, 1964. Although both parties indicate that the appeal is taken from an order dated October 20, 1964, we will treat this appeal as if taken from the final decree. After four years of litigation, this case deserves a decision on its merits.

The parties were married in 1956. On May 11, 1961, the husband filed his complaint alleging indignities to the person. The wife contested the case from the beginning and has been represented by several different attorneys. On November 15, 1961, Morris Zimmerman, Esq. was appointed master. Hearings were held before the master on January 3, 4, 5, 8, 9, 10 and 11, 1962, and voluminous testimony was taken. Prior to the transcription of the testimony Mr. Zimmerman died without having filed any report. On April 5, 1962, the court appointed a successor master and directed him to review the testimony already taken and make his report. This order was amended on May 21, 1962, directing that the master review the testimony already taken and take such further testimony as he deemed necessary. Another order was entered by the court on December 5, 1962, amending the prior orders to provide that the parties might recall any witnesses for additional examination or cross-examination and might present any further evidence they desired before the master. Although counsel for both parties consented to the order of December 5th, counsel for the wife asked that the master be directed to hear the case de novo. This petition was heard before the court en banc which again, on March 4, 1963, referred the case to the successor master and directed that he review the testimony already taken and take such additional testimony as he deemed necessary. A request was then made that the orders of the court in regard to the master's duties be clarified. The court directed that the case proceed under the order of March 4, 1963. The successor master proceeded on the basis of the last mentioned order and filed his report on November 22, 1963, in which he recommended that the husband be granted a divorce a.v.m.

The wife-appellant argues that the successor master should have been directed by the court below to hear

the testimony de novo. This she claims is required by Pa. R. C. P. No. 1133, which provides, inter alia, that after an action is at issue "the court shall hear the testimony, or . . . may . . . appoint a master to hear the testimony and return the record and a transcript of the testimony to the court, together with his report and recommendation."

A consideration of the respective duties of the courts and the master in a divorce case in Pennsylvania convinces us that this rule does not compel a complete retaking of the testimony by this successor master. A master's report, called advisory in some cases, is not controlling either in the lower court or on appeal. Both the trial court and the appellate court must fully examine the testimony and decide upon the merits of the case independent of the master's report. *Nacrelli v. Nacrelli,* 288 Pa. 1, 136 A. 228 (1927); *Langeland v. Langeland,* 108 Pa. Superior Ct. 375, 164 A. 816 (1933). The weight to be given the master's report was aptly summarized in the *Langeland* case as follows:

"The question in a divorce case is not whether there was evidence to support the findings of the master; it is the duty of the court to make its own independent and careful investigation of the evidence to ascertain whether it does in truth establish a legal cause for divorce. No matter what drudgery may be involved, this judicial function cannot be relinquished or evaded by the appointment of even the most competent master. True, the master's report is entitled to the fullest consideration because of his personal contact with the witnesses, but it does not come into court with any preponderating weight or authority which must be overcome by the opposing party."

Therefore, as has often happened, the trial court or the appellate court, neither of which heard the witnesses, may decide the case contrary to the conclusion of the master. In the *Nacrelli* case the master recom-

mended a divorce. Exceptions to the report were dismissed by the lower court and a decree of divorce entered by it. The Superior Court examined the record and the evidence and refused the divorce. The action of the Superior Court was affirmed by the Supreme Court. The Superior Court in the *Nacrelli* case had not heard the witnesses any more than we have in this case. Thus while it is advisable and desirable that the courts have the benefit of the report of a master who has heard and seen the witnesses, it is not absolutely required that the successor master hear and see the witnesses since the report has no binding effect. Under the circumstances of this case, where it would have placed an additional financial burden on the husband-plaintiff and caused unwarranted delay in a case which had already consumed 736 pages of testimony covering seven full days of hearings, we hold that it was not necessary that the successor master be directed to rehear the testimony de novo.

The wife objects that the testimony does not support a finding that the husband had been a bona fide resident of the State of Pennsylvania for at least one year immediately prior to filing his complaint in divorce. We have made a careful independent examination of the testimony and are satisfied that the husband has met his burden of clearly proving the jurisdictional requirements.

Bona fide residence for purposes of The Divorce Law means residence with domiciliary intent. By domicile is meant the place where a person has his true, fixed, permanent home and principal establishment, to which whenever he is absent he has the intention of returning. *Horne v. Horne,* 191 Pa. Superior Ct. 627, 159 A. 2d 239 (1960). The husband's testimony, which is competent to prove his residence for divorce purposes, showed that he moved to Pittsburgh, Pennsylvania, in 1933, and since that time always intended to make

Pittsburgh his home. Plaintiff owned an apartment building there where he and the defendant lived from 1956 to 1959, and a home there to which they then moved. He owned and operated a bakery there. His interest in horses and warm winters led him to vacation with his wife in Florida frequently. They also travelled to Europe and the New Jersey shore frequently, but Pittsburgh was the place to which whenever he was absent he always had the intention of returning. As he said on cross-examination: "My intention was every year go down Florida four months and, after the winter season is over, I come back Pennsylvania. That was my intention every year the past fifteen year." Confusion arises from the fact that he and his wife had a house in Florida for several years where they went each winter. But the property in Florida was sold in April of 1960, and he and his wife again returned to Pittsburgh. The wife's testimony shows this date to be correct. April, 1960 was a little more than one year prior to the filing of the divorce complaint on May 11, 1961. Thus plaintiff clearly had at least one year's bona fide residence. However, we need not rest our finding of the required residence on this April, 1960 date because we are satisfied that Pittsburgh was the home of the husband at least since this marriage in 1956 and that such continued to be his home to the date of the filing of the complaint. No matter where he went during those years he always returned to Pittsburgh. The actions of both the husband and wife show that Pittsburgh was their permanent residence with domiciliary intent during the entire marriage. Such residence meets the requirements of The Divorce Law. See *Verbeck v. Verbeck,* 160 Pa. Superior Ct. 515, 52 A. 2d 241 (1947).

After an examination of all the evidence we are of the opinion, independent of the findings of the master, that the charge of indignities is sustained by a pre-

ponderance of the evidence showing clear and satisfactory proof. Such is the proof required. *Dash v. Dash,* 357 Pa. 125, 53 A. 2d 89 (1947) ; *Snyder v. Snyder,* 141 Pa. Superior Ct. 533, 15 A. 2d 383 (1940). The wife accused the husband of acts of homosexuality and of having illicit affairs with women. She objected to the way the husband ate. She embarrassed him by loud and complaining talk in public places. She accused him of dishonesty. She objected to the way he ran his businesses. She objected to any acts of generosity on his part no matter how small they might be, and she generally harassed and annoyed him in almost everything he did. These acts on her part continued through most of the married life of the parties. Many of the acts on the part of the wife, including some of the accusations of sexual misconduct, were corroborated by witnesses. The accusations of sexual misconduct and infidelity were obviously false. The testimony clearly shows that the wife treated her husband with vulgarity, unmerited reproach, intentional incivility, abusive language, malignant ridicule, and other manifestations of settled hate and estrangement so as to be guilty of indignities within the definition so often laid down by our courts. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958).

The wife-appellant also complains that the master did not make proper findings of fact to support his conclusions in regard to jurisdiction and indignities. We believe that the master did make proper findings of fact. The discussion and addendum attached by the master to his report make the findings sufficiently clear. There is no statutory requirement that the findings of fact be in any particular form and the rules of the court below govern such procedure. It must be kept in mind, as we pointed out above, that it is the duty of the court below and this court to review the case de novo and to determine whether a divorce should

be granted independent of the findings or conclusions of the master. Therefore, even if there were formal inadequacies in the master's report, it would not be ground for reversal. *Snyder v. Snyder,* supra.

Order and decree affirmed.