Regan *v.* Regan, Appellant.

Argued March 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David H. Kubert,* for appellant.

*William J. MacDermott,* for appellee.

OPINION BY PRICE, J., April 11, 1974:

This matter comes on appeal from the entry of a Final Decree by the Court of Common Pleas of Philadelphia, Family Division, granting husband-appellee a divorce. As required, we have given this matter de novo review and will reverse and refuse the divorce a.v.m.

The parties were married on June 4, 1919, in Philadelphia and both were residing in Philadelphia at the time this action was instituted. Husband-appellee had instituted a prior divorce action in 1953, which was still pending at the time this action was filed and the complaint in the present action failed to state this fact, contrary to the requirements of the Pennsylvania Rules of Civil Procedure. We do not, however, reverse on that ground, since apparently the Master granted the right

to amend and the prior action was, in fact, discontinued as of November 17, 1972, prior to the filing of the Master's Report, although subsequent to the taking of testimony. We condemn this as bad practice and procedure as it is contrary to the purposes of the rules of procedure on this matter.

The two children born of this marriage are Mary, now in her 54th year and married, and Alice, now in her 52nd year and married. The wife is in her 76th year and the husband is in his 79th year. The parties finally separated in August of 1936, although there were periods of separation in 1933 and 1934 (T. 66— Hearing of August 7, 1972), when Mr. Regan left the common abode.

This divorce is sought on the grounds of indignities, and was recommended by the Master and granted by the Court below on that ground. It has been, therefore, at least 38 years since the occurrence of the events giving rise to this action. It is clear from the testimony taken in the two hearings before the Master[1] that this time lapse has greatly dulled the ability of even the parties themselves to recall the details of their marriage, and the only other witness, their daughter Alice, was only 14 years of age in 1936.

There is no general statute of limitations applicable to divorce actions and generally mere delay in bringing a divorce action is not a ground for denial of the relief sought. *Larsen v. Larsen,* 184 Pa. Superior Ct. 221, 132 A. 2d 883 (1957). However, long delay in bringing a divorce action after separation casts doubt on the good faith of the plaintiff. *Orme v. Orme,* 177 Pa. Superior Ct. 209, 110 A. 2d 870 (1955). Accordingly, divorces have been denied where it appeared that, after the alleged grounds accrued, the plaintiff waited for a period

---

[1] The Opinion below incorrectly lists three hearings. There was no hearing on March 28, 1972.

of as long as seventeen years, *Garroway v. Garroway,* 163 Pa. Superior Ct. 317, 61 A. 2d 379 (1948), adopted by the Supreme Court of Pennsylvania in 361 Pa. 464, 65 A. 2d 414; or twenty years, *Orme v. Orme, supra,* to bring the action. Pennsylvania has long recognized that which common knowledge must indicate: that long dormant alleged offenses are seized upon to open the door to matrimonial freedom at some later and more urgent prompting. We are not aware of any prior case where the delay has reached the 38 year mark of the present case but our de novo review urgently confirms the wisdom of Pennsylvania's prior policy and decisions.

There are, however, other matters which also lead us to reversal in this case. We are deeply cognizant of the matter of credibility which weighed so heavily in the recommendation of the Master and the decision in the Court below, nevertheless, our review does not lead us to the same conclusion and we reluctantly reject the finding that credibility supports the granting of this divorce. Appellee called no witness, other than himself, in support of his contentions and while this of itself is not fatal to his action, it does lead the Master to conclusions supported *solely* by hearsay testimony. A Master's hearing, although perhaps less formal, is no less subject to the rules of evidence than a trial before a Judge. Appellant's attorney objected on numerous occasions to hearsay but in most instances the Master admitted the testimony without a ruling and later based a large part of her findings on such testimony. This, in large measure, is explained by the Master by a finding that Appellant admitted to misconduct; however, we conclude otherwise.

Most of the possible witnesses, particularly Appellee's sister, a Mrs. Barrett, and Mr. Barrett, Appellee's brother-in-law, are deceased. Appellee's prime accusation against Appellant focuses on an alleged improper relationship between Appellant and Mr. Barrett; a re-

lationship firmly denied by Appellant, although it is admitted that they were friends and, accepting separations between the parties in 1933 and 1934 as true as supported by the daughter's testimony, we find this friendship to be entirely within the bounds of a proper relationship brought about by the disruption caused by Appellee's abrupt departure from the home in 1933.

The Master's Report at page 12 in discussing this relationship says: "While she denied the relationship she was alleged to have had with Mr. Barrett, she did admit that she was in his company on a number of occasions and stated in that connection: '. . . I made the mistake of meeting Barrett. I should not have done it.' (T. 53 August 7, 1972 Hearing)". This admission sounds most damaging out of context; however, the whole of the testimony is quite the contrary. The meetings were to discuss the home, the children[2] and the future after Appellee first left the home. The testimony does not establish a course of conduct with a member of the opposite sex that is in any way improper, let alone suggestive of adultery. And this is especially true where it is not established except on the sole, unsupported testimony of the Appellee. Here the Master clearly relied on hearsay evidence to find that such conduct was open and notorious (for example T. 32, 33 & 34, April 12, 1972 Hearing) or known to friends, relatives or associates (clearly unestablished since Appellee was his only witness).

Other possible witnesses are either deceased or the parties have lost track of them. This, too, illustrates a prejudice to the determination of the truth after a delay of 38 years.

Appellee's other complaints are not unusual in cases of this nature including failure to prepare meals, do laundry, have food in the house and adequately care for

---

[2] See T. 76 & 77 August 7, 1972 Hearing.

the children. The Master and the Court below accept these allegations but we do not find the record to support them. Of course, the parties conflict but even Appellee gave weak testimony on all but the "other man" allegation. Further, even though the daughter was only 14 at the time, we believe as regards the home her testimony is most reliable and she was most positive that her mother had provided a good home for all the family including her father.

We are further impressed by the testimony of Appellee, under oath, at hearings on matters relating to support which were held on November 6, 1936, and May 4, 1938. They are in direct contradiction to the present complaints Appellee makes concerning his wife's[3] care of the children. Indeed it is hard to accept Appellee's interest in the children's welfare since by his own admission he did not see either one of them from 1936 until sometime after each of them was married.

The course of conduct amounting to such indignities as would justify a divorce is incapable of specific or exact definition and each case must necessarily depend on its own facts. In a proceeding for divorce on these grounds, the burden was on the Appellee to make out a case by clear and satisfactory evidence, a case upon which the court may confidently rest a decree. *Reddick v. Reddick,* 194 Pa. Superior Ct. 257, 166 A. 2d 553 (1961) ; *Dello Buono v. Dello Buono,* 193 Pa. Superior Ct. 118, 163 A. 2d 662 (1960). While the Appellee was required to prove his case only by clear and satisfactory evidence, there must be a preponderance of the evidence in his favor. *Davidson v. Davidson,* 191 Pa. Superior Ct. 305, 156 A. 2d 549 (1959). A divorce action may be sustained upon the sole testimony of a party, but

---

[3] For example, in the Hearing of May 4, 1938, T. 6: "Q. The mother takes good care of the children? You have no objection? A. I have no fault to find at all."

558

where such evidence is contradicted and where doubt is cast upon the good faith of that party, there must be convincing circumstances which warrant disregard of the opposing evidence. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958). The Appellee-plaintiff must not only establish a course of conduct on the part of the Appellant-defendant as to render the condition of his life intolerable by evidence from which an inference of settled hatred and estrangement can be deduced, but he must also show that he was the innocent and injured spouse within the contemplation of the statute. *Faszczewski v. Faszczewski,* 182 Pa. Superior Ct. 295, 126 A. 2d 773 (1956); *Vergoni v. Vergoni,* 175 Pa. Superior Ct. 522, 107 A. 2d 144 (1954). Appellee has failed in all of these respects.

The decree is reversed and the complaint in divorce is dismissed.