457 A.2d 951

**Needom I. JONES, Appellant,**

v.

**Leona JONES.**

Superior Court of Pennsylvania.

Submitted March 16, 1981.

Filed March 11, 1983.

408

S.R. DiFrancesco, Sr., Johnstown, for appellant.

David J. Kaltenbaugh, Johnstown, for appellee.

Before PRICE,* BROSKY and MONTEMURO, JJ.

PRICE, Judge:

This appeal comes to us from an order by the Honorable Caram J. Abood dismissing appellant's exceptions to the

---

* This decision in this case was reached prior to the death of Judge Price.

master's denial of a divorce on the grounds of indignities. We affirm the lower court based on the master's conclusion that appellant's allegations are insufficient to establish the grounds of indignities.

The facts surrounding this appeal are as follows. The litigants, Needom I. Jones and Leona Jones, were married in Johnstown, Pennsylvania on August 6, 1977. No children were born of this marriage. The couple established their residence at Mrs. Jones' home where her twenty-two year old son from a previous marriage, Reginald, resided with them. On April 29, 1979, Needom separated from Leona. On July 18, 1979, Mr. Jones filed a Complaint in Divorce alleging that he was the injured and innocent spouse and that Leona offered such indignities to his person as to render his condition intolerable and his life burdensome. In a bill of particulars filed subsequently, appellant alleged 1) that the behavior of appellee's son in the household caused him immense physical and emotional upset, and 2) that the failure of appellee to remove her son from the house amounted to condonation of her son's behavior and, therefore, constituted indignities to appellant.

In his testimony before the master, appellant stated that the problems in the marriage were caused for the most part by the presence of Leona's son in the household. He testified that Reginald had admitted to stealing money from his dresser several times. According to Mr. Jones, when he complained about these incidents to his wife, she "took [Reginald's] side of the argument," (N.T. at 10), and refused to reprimand the young man. Mr. Jones also testified that Reginald admitted stealing a "beef roast" from the household. (N.T. at 13).

However, appellant's primary contention was that Reginald smoked marijuana while at home to such a degree that the smoke caused appellant to become physically ill requiring him to take prescription drugs. When asked by his counsel if he informed Mrs. Jones about the marijuana, appellant responded that he had told her it was causing him

headaches and nausea and that she had promised to discuss the problem with Reginald.

However, when questioned by the master regarding the problem, appellant responded in this way:

THE MASTER: Mr. Jones, did you ever specifically ask your wife to do something about her son, meaning telling him to leave the household?

MR. JONES: No. I didn't. I didn't tell her to tell him that....

THE MASTER: Do you know if she ever talked to him?

MR. JONES: I don't know. I never did ask her about it.

(N.T. at 19, 20)

On direct examination, appellee admitted knowledge of the money stealing incident but testified that she had ordered her son to return the money to Mr. Jones. However, she denied knowledge of the meat incident and the problem regarding the marijuana. She stated: "And [Needom] never talked to me about Reggi[,] those smoking habits or nothing because I don't know what the scent is. I smelled strange scents, but I didn't know what it was." (N.T. at 23). When asked by her counsel to describe the relationship which existed between her husband and her son she answered:

Well, really I didn't know it was as bad as it was until—I just didn't know because my son seemed like he liked him and they would speak.... I thought everything was all right. And so far as this sickness about this marijuana, my husband didn't stay home that much and my son didn't either and it is strange that all of this occurred when he didn't stay home that much.

(N.T. at 24).[1]

In the review of a divorce case, it is the responsibility of this court to make a de novo evaluation of the record

___

1. Appellee also testified that appellant left the marital home without offering her any reason other than that he was "not satisfied." (N.T. 30–31). Appellant subsequently denied this, testifying that when he left he told her it was due to the marijuana and "[o]n account of your children." (N.T. at 33).

and to decide independently of the master and the lower court whether a legal cause of action in divorce exists. *Rensch v. Rensch,* 252 Pa.Superior Ct. 294, 381 A.2d 925 (1977). *See also, Mintz v. Mintz,* 258 Pa.Superior Ct. 187, 392 A.2d 747 (1978), *Gehris v. Gehris,* 233 Pa.Superior Ct. 144, 334 A.2d 753 (1975). In this case, we agree with the master's conclusion that allegations of misconduct solely by a third party and not by the defendant in a divorce action are insufficient to establish the ground of indignities when there is no evidence that the third party was acting with the approval of or under the direction of the defendant.

Section 10 of the Act of May 2, 1929, P.L. 1237, as amended, 23 P.S. § 10,[2] sets forth the following as the ground of indignities in a divorce action:

1. When a marriage has been heretofore or shall hereafter be contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse:

... (f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome....

No general rule has been formulated by our courts as to what constitutes indignities in a particular case. All the facts and circumstances must be considered. *Riley v. Riley,* 246 Pa.Superior Ct. 265, 369 A.2d 1314 (1976). The cases do agree that indignities can be found in vulgarity, unmerited reproach, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement. *McKrell v. McKrell,* 352 Pa. 173, 42 A.2d 609 (1945); *Mintz v. Mintz, supra.*[3] The burden is on the plaintiff to

**2.** This action was brought prior to the adoption of the Divorce Code of 1980, 23 P.S. §§ 101–801. Subsection 201(a)(6) of the new Divorce Code, 23 P.S. § 201(a)(6), defines indignities in the same manner.

**3.** *See also, Steinke v. Steinke,* 238 Pa.Superior Ct. 74, 78, 357 A.2d 674, 676 (1975): "Such conduct is understood to manifest the spirit of

demonstrate a course of conduct on the part of the defendant spouse which is humiliating, degrading, and inconsistent with the innocent and injured spouse's position rendering his condition intolerable and his life burdensome. *Boniewicz v. Boniewicz*, 266 Pa.Superior Ct. 210, 403 A.2d 999 (1979). Furthermore, in *Barnes v. Barnes*, 181 Pa.Superior Ct. 427, 124 A.2d 646 (1956), we stated that an essential element of the charge of indignities is the intentional conduct by the spouse indicative of this attitude. The facts now before us in this case do not present a situation in which, under the foregoing guidelines, a wife has committed indignities upon her husband.

Appellant directs our attention to *Picciano v. Picciano*, 110 Pa.Superior Ct. 189, 168 A. 488 (1933), where this court held that the defendant's abuse of plaintiff's child by a prior marriage may be an indignity even if plaintiff was not present. Appellant attempts to convince this court that the *Picciano* holding can logically be extended to the instant situation where defendant's son brings about an intolerable condition and causes plaintiff's life to be burdensome. We are not persuaded that this is a viable argument. *Picciano* and the instant case provide distinctly different circumstances and we can draw no rule from *Picciano* which can be applied presently.

Appellant also argues that even though appellee was not a direct participant in inflicting the wrong, she can be charged with it because she tolerated and permitted the acts to continue.[4] Even were we to accept this as an

malevolence, hate and estrangement which has come to replace natural love and affection in a marriage and is central to a charge of indignities."

**4.** As authority in support of this argument, appellant relies on Freedman, *Law of Marriage and Divorce in Pennsylvania*, § 340 (2d ed. 1957), which states:

As in cruelty, so also in indignities, one who counsels or directs a commission of ill-treatment by a third person against the spouse, thereby joins in the wrong. The fortuitous presence of a spouse, however, during the infliction of a wrong, cannot, of itself render him a participant unless circumstances reasonably require that he actively intervened to prevent its continuance.

accurate statement of the law, appellant has not met his burden of proof. The testimony, as discussed above, compels us to find that appellant did not prove condonation by Mrs. Jones of her son's behavior "by a preponderance of clear and satisfactory evidence setting forth compelling reasons for the severance of the marriage relationship." *Mintz v. Mintz*, 258 Pa.Superior Ct. 187, 192, 392 A.2d 747, 749 (1978). *See also, Regan v. Regan*, 227 Pa.Superior Ct. 552, 322 A.2d 711 (1974).[5]

We, therefore, affirm the lower court's order dismissing exceptions to the master's denial of divorce.

---

**5.** We also note the proposition stated in *Coon v. Coon*, 173 Pa.Superior Ct. 60, 95 A.2d 344 (1953), that a divorce may not be granted where plaintiff's testimony is uncorroborated and is contradicted in material respects to the extent that the result is no more than a doubtful balance of evidence. This rule is certainly pertinent here where the testimony was primarily accusation and denial by the parties.