## Smoke v. Smoke

*April L. Cordts,* for plaintiff.
*Ronald J. Karasek,* for defendant.

VAN ANTWERPEN, *J.,* December 3, 1984—This matter is presently before this court on defendant-husband John T. Smoke's exceptions to a master's report. Defendant-husband excepts solely to the master's finding which placed a value of $332.50 upon a certain silver ingot set.

At the initial master's hearing on September 22, 1983, defendant-husband and plaintiff-wife, Trudy C. Smoke, entered into a settlement agreement which provided in part that the subject ingot set was to be returned to defendant-husband. Subsequently, at the master's hearing of May 11, 1984, plaintiff-wife indicated she could not return the ingot set as she had previously cashed it in at a Lehigh Valley Mall coin shop in November, 1982. Plaintiff-wife testified that she did not bring this to the master's attention at the September 22, 1983 hearing as she was "afraid to say something." Plaintiff-wife further testified that the set consisted of 36 silver ingots, 35 of which were cashed in (both parties testified that one ingot was missing from the set) at a price of $9.535 per troy ounce of silver or a total sum of $332.50. The master awarded this amount to defendant-husband in lieu of the silver ingot set, an amount to which defendant-husband excepts.

Defendant-husband contends the master erred in relying on the testimony of plaintiff-wife as to the number and value of ingots in the set. Defendant-husband argues that plaintiff-wife's testimony is not credible as she misrepresented material facts at the initial master's hearing by agreeing to return the ingot set when she in fact had already sold it. Defendant-husband contends that the ingot set con-

sisted of 50 silver ingots and not 35 as testified to by plaintiff-wife.

This case presents us with an issue of credibility between the parties. The master, in his master's report of August 24, 1984, specifically reported that he found plaintiff-wife's testimony concerning the number of ingots and the value of the set more credible than that of defendant-husband. It has been said that the issue of credibility of witnesses in a divorce action is not entirely within the master's discretion. The court has a duty to perform a complete and independent review of all the evidence presented in the action, including a complete review of the weight and credibility to be accorded the testimony of the witnesses. Riley v. Riley, 246 Pa. Super. 265, 369 A.2d 1314 (1976). The court must examine the record in detail so as to discover inherent probabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods, and other factors by which credibility may be ascertained. Ryave v. Ryave, 249 Pa. Super. 78, 375 A.2d 766 (1977). "However, where the issue is one of credibility and the master is the one who heard the testimony and observed the demeanor of the witnesses the reviewing Court must give his findings regarding credibility the fullest consideration." Rollman v. Rollman, 280 Pa. Super. 344, 421 A.2d 755 (1980).

In the case before us, it is true plaintiff-wife misrepresented to the master at the September, 1983 hearing that the ingot set remained in her possession. In spite of this misrepresentation however, the evidence on record supports the master's finding that plaintiff-wife's testimony concerning the number and value of the ingots was more credible. The testimony indicates that plaintiff-wife purchased

the ingots on a one-a-month plan from the Franklin Mint Company in Philadelphia, Pa. Plaintiff-wife learned of the plan through the bank she worked at, and she, individually, wrote out the check each month. Plaintiff-wife purchased the ingots once-a-month for a period of over two years. Finally, plaintiff-wife personally sold the set in November of 1982. All this testimony would indicate that plaintiff-wife would be more inclined to recollect the number of ingots purchased. Further, defendant-husband himself testified that the ingots were purchased once-a-month for over two years. This is more consistent with the purchase of 36 ingots than with the purchase of 50. In fact, the record is devoid of any evidence to support defendant-husband's contention that 50 ingots were purchased.

In Rollman, supra., although the Superior Court found plaintiff's testimony to be "shaken", they overruled the trial court for failing "to give the fullest consideration to the master's findings regarding credibility." Rollman, p. 351. Accordingly, we believe the record supports the master's reliance on the testimony of plaintiff-wife, albeit her prior misrepresentation.

Defendant-husband next contends the master erred in relying on a dealer's receipt submitted by plaintiff-wife in determining the value of the silver ingot set. Defendant-husband argues the receipt is uncorroborated hearsay testimony and inadmissible. Plaintiff-wife contends the master's reliance on the dealer receipt in fixing the value of the set was proper in that defendant-husband failed to raise an objection to its admission at the master's hearing. Plaintiff-wife argues that as a result of such failure, defendant-husband has waived his right to object.

In Commonwealth v. Keysock, 236 Pa. Super. 474, 345 A.2d 767 (1975), the court provided:

"A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial. Commonwealth v. Williams, 458 Pa. 319, 326 A.2d 300 (1974); Commonwealth v. Kuterbach, 458 Pa. 318, 326 A.2d 283 (1974); Commonwealth v. Clair, 458 Pa. 418, 326 A.2d 272 (1974). And second, he must raise the issue on post-trial motion. Commonwealth v. Belvins, supra; Commonwealth v. Bronaugh, supra; Commonwealth v. Kearney, supra; Commonwealth v. Reid, supra; Commonwealth v. Agie, supra." Keysock, p. 478-79.

The issue we are presented with is whether the above-mentioned rule of evidence is applicable to a master's hearing, and in particular, whether a party is required to make an objection to the admission of evidence at a master's hearing in order to preserve their right to later file an exception to such admission.

In Pennsylvania, a master has the status of a judicial officer. Commonwealth v. Beddick, 180 Pa. Super. 221, 119 A.2d 590 (1956). Pursuant to such status, "a master's hearing, although perhaps less formal, is no less subject to the rules of evidence than a trial before a judge." Regan v. Regan, 227 Pa. Super. 552, 322 A.2d 711 (1974). This language is indicative of our judiciary's intention to encourage the use of a master in divorce proceedings and to empower the master with such means necessary to effectuate a fair, impartial, and organized trial-like hearing. Moreover, Pa.R.C.P. 1920.55(a) makes it clear that objections are necessary and expected at a master's hearing to preserve an issue for later exception to the ruling on such objection:

"(a). Within ten days after notice of the filing of the master's report has been mailed, exceptions may be filed by any party to the report or any part

thereof, *to rulings on objections to evidence,* to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. *Each exception shall set forth a separate objection precisely* and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters. (Emphasis supplied.)

Furthermore, it has been said that:

". . . where a cause is referred to a master to take and report the proofs with his conclusions of law and fact, all evidence must be introduced before him, and he may pass on the competency and value of the testimony, and the credibility of the witnesses, *being governed by the ordinary rules of evidence by which a court would be governed;* but unless the evidence is clearly inadmissible the better practice is to receive it *subject to the objections,* so that it may go into the record and be considered without a re-reference if the court should deem it admissible.

*An objection should always be made when the evidence is offered,* and an exception taken and an offer of proof be made." (Emphasis supplied.) 30A C.J.S., Equity, §537.

Accordingly, we hold that pursuant to Beddick, Regan and Pa.R.C.P. 1920.55(a), our judiciary and legislature intended a master, albeit not so stringently, to follow the ordinary rules of evidence observed by our trial courts, especially a rule so axiomatic as that requiring an objection for issue preservation.

In the case before us, defendant-husband failed to object to the admission of the hearsay dealer receipt into evidence. "It is well settled that, where evidence incompetent as hearsay, is admitted with-

out objection, and is relevant and material to the fact in issue, the court may give it the value of direct evidence and on it base a finding of fact." Schade v. Milk Control Commission, 196 Pa. Super. 14, 17, 173 A.2d 647, 648 (1961). There is no question that the receipt was relevant and material to the value of the silver ingot set. It corroborated the testimony of plaintiff-wife that she received $332.50 for the set from a Lehigh Valley Mall coin shop.

Accordingly, we find that the master did not err in admitting the dealer receipt into evidence or in relying on such receipt in addition to the testimony of plaintiff-wife when fixing the value of the silver ingot set at $332.50.

Wherefore, we enter the following

## ORDER OF COURT

And now, this December 3, 1984, upon a review of the depositions and briefs of counsel, defendant-husband's exceptions to the master's report are denied.