491 A.2d 899
**Shrikant Nandan Prasad SINHA, Appellee,**
v.
**Chandra Prabha SINHA, Appellant.**
Superior Court of Pennsylvania.
Argued June 6, 1984.
Filed April 12, 1985.

Pamela A. Falls, Muncy, for appellant.

James R. Flick, Media, for appellee.

Before SPAETH, President Judge, and McEWEN and TAMILIA, JJ.

McEWEN, Judge:

Appellant-wife, in this appeal from a final decree in divorce, contends that the trial court erred in finding that appellee-husband, a citizen of India, was a bona fide resident of Pennsylvania for purposes of divorce jurisdiction. Appellant also argues, as an alternative ground for vacating the decree of divorce, that she and her husband had not lived separate and apart for three years as required by Section 201(d) of the Divorce Code, 23 Pa.C.S. § 201(d). We affirm the final decree entered by the now deceased, distinguished jurist of cherished memory, Judge Joseph W. deFuria, following dismissal of appellant's exceptions to the report of the master.

The parties were married on March 11, 1974, in Patna Bihar, India. Appellee traveled to the United States in August of 1976 on a student visa to pursue a master's degree in city and regional planning at Rutgers University. Appellant was unable, due to her inability to obtain a visa, to visit or join her husband in the United States. The parties did, however, regularly correspond until mid-1979 when appellee instituted an action in divorce in New Jersey. This action was discontinued by appellee when he moved from New Jersey to Pennsylvania.

Appellee was offered employment with the Delaware County Planning Department and applied for an H–1 (temporary worker) classification [1] under the Immigration Laws.

---

1. An H–1 classification is known as a temporary worker status. Immigration and Nationality Act of June 27, 1952, Pub.L. No. 82–144, as amended, § 245, 8 U.S.C. § 1101:

The application was granted and the H–1 classification was issued on April 3, 1980. Six months later appellee instituted the present action in divorce in the Court of Common Pleas of Delaware County. Appellee alleged in his complaint that he had been a bona fide resident of Pennsylvania for more than six months, that the parties had been living separate and apart for a period in excess of three years and that the marriage was "irretrievably broken". *See* 23 Pa.C.S. § 201(d). A general master was appointed and evidence presented on the issue of the dissolution of the marriage as well as on the jurisdiction of the Pennsylvania courts. The master concluded (a) that the courts of Pennsylvania were possessed of jurisdiction to entertain the divorce action and (b) that appellee was entitled to a decree in divorce. Appellant's exceptions to the master's report were dismissed following a hearing and a final decree of divorce duly entered.

Appellant argues that since appellee was permitted to enter the United States pursuant to a temporary non-immigrant visa, his H–1 immigration classification required him to maintain, at all relevant times, a permanent residence abroad "which he has no intention of abandoning." Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H). Appellant asserts that appellee's permanent residence and domicile, as a matter of federal law, was India. Thus, she argues, the Court of Common Pleas of Delaware County, bound, under the Supremacy Clause, by the provisions of the Immigration and Naturalization Act, was without jurisdiction to entertain the action for divorce.

(H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country; or (iii) who is coming temporarily to the United States as a trainee; and the alien spouse and minor children of any such alien specified in this paragraph if accompanying him or following to join him.

■ The Pennsylvania Divorce Code provides that an action in divorce may not be commenced unless one of the parties to the marriage has been a bona fide resident of the Commonwealth for at least six months prior to the institution of the action. 23 Pa.C.S. § 302. This residency requirement has been interpreted by this Court to require actual residence coupled with domiciliary intent. *Zinn v. Zinn*, 327 Pa.Super. 128, 475 A.2d 132 (1984). *See also McKenna v. McKenna*, 282 Pa.Super. 45, 422 A.2d 668 (1980); *Smith v. Smith*, 206 Pa.Super. 310, 213 A.2d 94 (1965). Appellant argues that appellee cannot satisfy both the domiciliary intent requirements of the federal immigration laws *and* the domiciliary intent requirements of the Pennsylvania Divorce Code, i.e., he cannot *intend* to maintain his permanent residence in India and also *intend* to be a permanent, bona fide resident of Pennsylvania. We are not persuaded by this argument. The status of appellee as a nonimmigrant alien with an H–1 classification is not necessarily inconsistent with an actual conditional intent to establish, if possible, permanent residency in the United States by the legal means provided by the "Adjustment of Status" section [2] of the Immigration and Naturalization Act

2. IMMIGRATION AND NATIONALITY

§ 1255. Adjustment of status of nonimmigrant to that of person admitted for permanent residence

(a) The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(b) Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference or nonpreference visas authorized to be issued under sections 202(e) or 203(a) [8 USCS §§ 1152(e) or 1153(a) ] within the class to which the alien is chargeable for the fiscal year then current.

(c) The provisions of this section shall not be applicable to (1) an alien crewman; (2) an alien (other than an immediate relative as

of 1952, Ch. 477, § 245, 66 Stat. 217 (1952), as amended, 8 U.S.C. § 1255, a provision which permits aliens already in the United States to apply for permanent resident status. *See Elkins v. Moreno*, 435 U.S. 647, 667, 98 S.Ct. 1338, 1350, 55 L.Ed.2d 614, 629 (1978)[3]. *Bustamante v. Bustamante*, 645 P.2d 40, 42 (Utah, 1982).

Even if appellant's alleged intent to establish permanent residency in Pennsylvania is inconsistent with the terms of his right of entry into the United States, he is not automatically precluded from becoming a domiciliary of the Commonwealth. As stated in *Williams v. Williams*, 328 F.Supp. 1380, 1383 (D.C.V.I., 1971):

Even assuming the least favorable situation, where an alien has misrepresented his true intent at the time he was granted entry to the country, the fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here. I see no reason to erect from the immigration laws an insuperable barrier of "constructive" intent in divorce litigation that cannot be overcome even by proof of a person's actual intent. The enforcement of immigration laws properly remains with those to whom it is entrusted by law and does not need in aid of enforcement the judicially created civil disability of exclusion from our divorce courts. There is no rational ground for intermin-

defined in section 201(b) [8 USCS § 1151(b) ] ) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status; or (3) any alien admitted in transit without visa under section 212(d)(4)(C) [8 USCS § 1182(d)(4)(C) ]. (June 27, 1952, ch. 477, Title II, subch. 5, § 245, 66 Stat. 217; Aug. 21, 1958, P.L. 85–700, § 1, 72 Stat. 699; July 14, 1960, P.L. 86–468, § 10, 74 Stat. 505; Oct. 3, 1965, P.L. 89–236, § 13, 79 Stat. 918; Oct. 20, 1976, P.L. 94–571, § 6, 90 Stat. 2705.)

**3.** In Elkins, the Supreme Court held that federal law does not prevent the establishment of a domicile in this country by nonimmigrant aliens with a G–4 status whose visas do *not* require them to maintain a permanent foreign residence. The Court *specifically did not decide* the question of whether H–1 nonimmigrant aliens whose visas *do* require permanent foreign residences to be maintained may establish a domicile in this country.

446

gling these two distinct areas of law—immigration and divorce.

*Accord Nagaraja v. Commissioner of Revenue,* 352 N.W.2d 373, 378 (Minn.1984); *Nicolas v. Nicolas,* 444 So.2d 1118, 1120 (Fla. 3rd D.C.A.1984); *Bustamante v. Bustamante, supra* at 42; *Pirouzkar v. Pirouzkar,* 51 Or.App. 519, 524–25, 626 P.2d 380, 383 (1981); *Cocron v. Cocron,* 84 Misc.2d 335, 343–44, 375 N.Y.S.2d 797, 809 (1975); *Gosschalk v. Gosschalk,* 48 N.J.Super. 566, 575–77, 138 A.2d 774, 780 (1958). "A visa is a document of entry required of aliens by the United States Government and is a matter under the control of the government. It has little relevance to the question of domicile." *Alves v. Alves,* 262 A.2d 111, 115 (D.C.App., 1970).

We conclude that federal law does not prevent the establishment of domicile for purposes of state court jurisdiction by a non-immigrant alien such as appellant.

■ The final argument of appellee arises from the statutory provision under which the complaint in divorce was filed:

> It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken. 23 Pa.C.S. 201(d)(1)

The phrase "separate and apart" is defined as "complete cessation of any and all cohabitation" 23 Pa.C.S. § 104. Appellant cannot, by reason of the span of continents between the parties since 1976, question that their separation meets absolutely this statutory definition of "separate and apart" since more than four years intervened between the departure of appellant from India in 1976 and the initiation of the instant action in divorce in Pennsylvania in 1980. Appellant proceeds to assert that the parties had not, however, been estranged "for a period of at least three years". "In the review of a divorce case, it is the responsibility of this court to make a *de novo* evaluation of the record and to decide independently of the master and the

lower court whether a legal cause of action in divorce exists." *Jones v. Jones,* 311 Pa.Super. 407, 409–11, 457 A.2d 951, 952 (1983). *Accord Thomas v. Thomas,* 335 Pa.Super. 41, 45, 483 A.2d 945, 946 (1984); *Remick v. Remick,* 310 Pa.Super. 23, 28–29, 456 A.2d 163, 166 (1983). While it is true that the initial separation was occasioned by the departure of appellant from India to the United States, our examination of the record leads us to conclude that the marriage has been "irretrievably broken" for a period in excess of three years.

Our eminent colleague in a quite compelling concurring and dissenting opinion would require that a marital breakdown precede the three year separation of the parties so that there will have been an irretrievable breakdown for three years prior to the filing of a complaint under 201(d). We need not, however, here address that issue since, as we have noted, the record demonstrates there had been an irretrievable breakdown in this marriage for a period of at least three years prior to the filing of the complaint.

The final decree in divorce is, therefore, affirmed.

SPAETH, President Judge, files a concurring opinion.

TAMILIA, J., files a concurring and dissenting opinion.

SPAETH, President Judge, concurring:

I agree that the trial court had jurisdiction. I write separately to note that the Divorce Code, 23 P.S. § 201(d)(1), requires only that "the parties have lived separate and apart for a period of at least three years, and that the marriage [be] irretrievably broken" at the time the complaint is filed. "Separate and apart" is defined as "[c]omplete cessation of any and all cohabitation." 23 P.S. § 104. Here, it is not contested that both the "separate and apart for .. three years" requirement and the "irretrievably broken" requirement are satisfied. There is no requirement in the Code that the marriage have been irretrievably broken for three years prior to the filing of the complaint; and I find no basis for reading such a require-

ment into the Code. I therefore concur in affirming the order of the trial court.

TAMILIA, Judge, concurring and dissenting:

I concur with the majority that there is jurisdiction and that appellee has the right to proceed in an action in divorce despite his standing as a non-immigrant visa holder. I dissent to the majority's finding that the facts establish a separate/apart and irretrievable breakdown of the marriage, ground as required by section 201(d) of the Divorce Code of 1980 (23 P.S. § 101 et seq.).[1]

A close reading of the transcript, particularly the evidence presented in the form of the letters addressed by the appellee to his wife in India between October 1977 and September 1978 (T.T. 3-17-82, pp. 18-25), evidenced an intent to maintain the marital relationship and countervailing evidence to an allegation of irretrievable marital breakdown.

Pennsylvania law is virtually non-existent as to when a separation, which is initially consensual, becomes a separate and living apart ground for unilateral divorce under section 201(d). Obviously, a time during the separation period must be ascertained which triggers the intent to separate and live apart so that the required three year separation can be calculated. Since this is a matter of intent, when the separation is voluntary, it is incumbent upon the party alleging the ground to carry the burden by a preponderance of the evidence which is clear and satisfactory. *Jones v. Jones*, 311 Pa.Super. 407, 457 A.2d 951 (1983); *Regan v. Regan*, 227 Pa.Super. 552, 322 A.2d 711 (1974); *Smith v. Smith*, 206 Pa.Super. 310, 213 A.2d 94 (1965). Appellee presented certain evidence of his state of mind indicating

1. The majority would interpret "separate and apart" purely as a function of time and not of intent. While it does not propose to deal with the statutory meaning of separate and apart, it avoids this by a general finding that there has been an irretrievable breakdown for a period of at least three years prior to filing the complaint. I do not believe this is possible as we must first determine *when* the intent to separate for *dissolution* purposes occurred, and only then can the time be calculated to establish the irretrievable breakdown.

his intent to separate, including filing of a divorce action in 1979. However, appellant supplied letters, which at length and in detail up until September of 1978, presented the mind of a concerned and loving husband who desired to be reunited with his wife in India or the United States. I believe these letters, written during a time when appellee would be considered to express his feelings without motive, are superior in evidentiary quality to his statements presented at trial, when he has motive to retroactively create a state of mind favorable to dissolution of the marriage.

While the appellate courts of Pennsylvania have not yet clarified this issue, this concept has been explored in other jurisdictions and resolved in favor of determining the establishment of the intent to separate, and a continuous uninterrupted period of separation thereafter, as a requirement of the statute.

In *Hooker v. Hooker*, 215 Va. 415, 211 S.E.2d 34 (1975), the Virginia Supreme Court held:

Where both parties are mentally competent, as in the present case, we hold that, as a prerequisite for a divorce under Code § 20–91(9),[2] there must be proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period.

We believe that the words "lived separate and apart" in Code § 20–91(9) mean more than mere physical separation. In our view the General Assembly intended that the separation be coupled with an intention on the part of at least one of the parties to live separate and apart permanently, and that this intention must be shown to have been present at the *beginning* of the uninterrupted two year period of living separate and apart without any

2. Code § 20–91 provides in pertinent part:
 A divorce from the bond of matrimony may be decreed:

 . . . . .

 (9) On the application of either party if an when the husband and wife have lived separate and apart without any cohabitation and without interruption for three years.

cohabitation. *Otherwise, many extended separations required by other circumstances could ripen to "instant divorce" without the salutory period of contemplation required by the statute during which the parties have an opportunity for reconciliation.* (emphasis added)

The facts are similar to the present case in that Hooker was overseas working as a civilian in Vietnam, and on the way home he informed his wife of his intent to divorce and instructed his lawyer to file for a divorce, using the prior period of time, August 1970 to November 28, 1972, the filing date of the complaint, as the statutorily required period. The court held that the intent could be factually established at its earliest from the letter to his attorney in May 1972, of his intent to divorce, the wife being informed in September 1972.

Here, defendant, up until September 1978, was manifesting his continued desire to maintain the marital relationship in letters to his wife in India. The actual letters admitted into evidence, when read in full, carry far more impact than the excerpts read into the record. The first manifestation of intent to permanently terminate marital cohabitation was the pro se complaint for divorce filed in New Jersey (but subsequently withdrawn) in 1979. The clearest manifestation of intent to terminate marital cohabitation is the divorce complaint filed on October 18, 1980, and *actively pursued.* It is important for policy reasons to view the filing of a complaint in divorce or for support (as with the wife's petition in India) as indications of marital disharmony, but unless *actively pursued,* experience shows these are often tactical maneuvers to bring issues in a marriage to a climax, which may result in strengthening the relationship as frequently as leading to dissolution. The numerosity of Pennsylvania cases that deal with the issue as to whether support cases, divorce actions, or property settlement agreements are a basis for positing a time indicating intent to separate, requires no elaboration.

The letters are far more persuasive than appellee's testimony to establish the intent to withdraw from the marital relationship. Thus I would conclude that the first objective (as opposed to self-serving) evidence of the intent to terminate marital cohabitation in this case, was the filing of the divorce complaint, which was actively pursued, dated October 18, 1980. To hold otherwise would place our imprimatur on conduct (the letters) permitting the husband to lull the wife into belief the marriage was still viable while he had the secret intent to terminate the relationship. Thus the ground for divorce in this case would not have accrued until October 18, 1983. That is not to say, in a proper case, that the ground could not have accrued prior to the filing of the complaint, or even after the filing of the complaint but prior to the date of trial; or that evidence of intent cannot be presumed from the facts. Our abundant experience with the willful malicious desertion and separation ground (201(a)(1)) in respect to intent and filing of the complaint will guide us in that respect.

I believe the great difficulty the legislature has had in enacting this ground (§ 201(d)), particularly in establishing any period less than three years, in providing for counselling under certain circumstances, *and* requiring proof of irretrievable breakdown when required by the court, manifest a clear intent that pro forma findings and coincidental separations will not suffice to establish the separation required by this act.

In the House and Senate hearings, debate on section 201(d) was the most involved, heated and controversial of all the debates involving the divorce code. It became the lynchpin of the code and to convince the majority of the house, after several failing votes and amendments, to accept a unilateral ground, the time of separation had to be increased from one year to three years. The vote for acceptance was 106 to 93. In the Senate, an amendment to include the three years separation unilateral ground was defeated. In order to obtain Senate acceptance, an amendment was offered to require a hearing, if requested, *and* a

judicial determination that the marriage was irretrievably broken *as well* as a separation for three years. The Senate adopted this amendment, which is the present form of section 201(d) by a vote of 26 to 24.

The intent of the unilateral proposal, while not specifically spelled out in the statute, can be ascertained by explanations put forth by Representative Scirica, the primary proponent of the Divorce Code of 1980, during the debate on the two year Cunningham amendment, a compromise to overcome failure of passage of a one year separation period. The House Journal Report of the debates (Rounick, Pennsylvania Matrimonial Practice, Part 3, (1983), Appendix B, p. 100) details the following statement by Mr. Scirica:

> The unilateral provision simply requires that the parties live separate and apart for two years, and it represents a conservative but workable approach to divorce reform. If we adopt this bill, it means that we will have *adopted an objective test for the break down of the marriage; that is, the marital state has disintegrated to the point where the parties have not lived together for a significantly lengthy period of time.* (emphasis added)

While in final form, the period was three years, the rationale remains.

Thus it is abundantly clear that the separation must be evidence of marital breakdown (disintegrated) and as such, cannot be a benign separation for the purpose of obtaining work, schooling or service to our country. If mere separation was the basis, then the underlying object of the amendments, which was to prevent divorce on demand, would have been frustrated and the legislative will thwarted. *See* Rounick, Pennsylvania Matrimonial Practice, *supra* pp. 29–209.

Additionally, social and employment conditions in this state are such that increasing numbers of our citizens are voluntarily leaving the marital home for employment purposes in other states and countries, or to take advantage of opportunities offered by the armed forces. It is incumbent

on this Court to make clear what is contemplated in law by the separation requirement of section 201(d).

Our most recent cases interpreting section 201(d), while focusing on the legislative intent and narrowing in on a judicially defined definition in the absence of a statutory one, have not specifically addressed this issue. In *Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984), a panel of this Court held that isolated acts of sexual intercourse during a three year separation period did not defeat actions for unilateral divorce. In searching for a definition, the panel draws analogy with our decisions in cases involving desertion grounds, (formerly 23 P.S. § 10(d) now 23 P.S. § 201(a)(1)), to ascertain a definition of cohabitation, "living or dwelling together." *Totino v. Totino*, 176 Pa.Super. 108, 106 A.2d 881 (1954). Similarly, while recognizing that the desertion ground at section 201(a)(1) requires malice, and has attached to it the requirement that the complaining spouse be innocent and injured, neither of which are elements in the unilateral separation ground at section 201(d), the conversion of a non-actionable separation to one which gives rise to an action of divorce must be preceded by proof of intent to abandon marital cohabitation before the time begins to run for calculating the one year desertion (§ 201(a)(1)) or the three year separation (§ 201(d)) ground. Although there must be concurrence of intent to desert and absence (from cohabitation) to establish desertion as a grounds for divorce, it is not necessary that intent to desert must arise precisely at the time of separation. *Ganunis v. Ganunis*, 201 Pa.Super. 222, 192 A.2d 236 (1963). Even if separation is consensual, it ripens into desertion when one spouse makes it clear that under no circumstances will he or she join the other. *Id.* Where separation was at first voluntary and without intent to abandon the marriage, the statutory period for desertion (here, separation) could not begin to run until there was conjoined with the physical separation of the parties the other necessary ingredients, intention to abandon the marriage or an irretrievable breakdown of the marriage. *See Jablonski v. Jablonski*, 188

Pa.Super. 337, 146 A.2d 813 (1959) affirmed 397 Pa. 432, 155 A.2d 614 (1959). Our most recent case, *McBride v. McBride*, 335 Pa.Super. 296, 484 A.2d 141, 143 (1984) deals with a separation compelled initially by a *consensual* protection from abuse order, and rightfully this Court held such a separation would run from the time of that order, despite appellant's contention it was consensual. There, the court held (Wieand, J.) "The no-fault divorce provision does not require that the parties living separate and apart be the result of a voluntary decision reached and agreed to by both parties; and this Court will not rewrite the statute to impose such a requirement."

In that case, the evidence was clear that there was intent to abandon marital cohabitation by the husband, and that the marriage was irretrievably broken, for a period exceeding three years. Clearly, that is not the case here, where the separation, voluntary in its inception, contemplated maintaining the marriage and resuming marital cohabitation as soon as conditions permitted. The intent to abandon marital cohabitation within the meaning of the act was not manifested for a period of three or more years prior to the petition or hearing on the divorce.

The position to which I would ascribe, as intended by the legislature in regard to § 201(d), is clearly delineated in 24 AmJur2d, Divorce and Separation § 148, and its numerous annotations.

### § 148. What constitutes.

"Separation," as a ground for divorce, means a physical separation of the parties, with the requisite intent, which is sometimes referred to as an intent to sever the marital status or an intent not to resume marital relations. In addition, some statutes prescribe the additional element that the separation must be "beyond any reasonable expectation of reconciliation." If the parties do not live under the same roof but have sexual relations from time to time, it has been held that a divorce on the ground of separation should be denied. There is a conflict of au-

thority as to whether the separation must have been by mutual consent.

*If the husband leaves the wife for some temporary purpose, and without any indication that his absence is to be permanent, there is no separation in contemplation of law, and no intent to separate.* For example, the husband's departure is not a separation where his announced purpose is to engage in business, establish a practice, or seek employment elsewhere, or if he is inducted into the armed forces. *But if the parties have separated for some temporary purpose and without any intent to effect a permanent separation, the requisite intent may be formed during the temporary separation, and the period of separation, as a ground for divorce, will begin to run on the date the intent is asserted.* (emphasis added) (footnotes omitted)

*Also see Otis v. Baham,* 209 La. 1082, 166 A.L.R. 494, 26 So.2d 146 (1946).

There appears to be no question that the appellee has no intent to reconcile, and that, from his view point, the marriage is irretrievably broken. I would not contend that this finding involves a time factor which must be concurrent with the separation, but to hold that the marriage may be dissolved when the period of separation and living apart, as calculated above, is less than three years, is tacitly approving, as a ground for divorce, irretrievable breakdown (unilaterally declared), which is not contemplated by the statute. Nor can the divorce be granted because the parties have been living separate and apart for three years—it must also appear that the marriage be irretrievably broken. *McBride, supra.*

For all of the above reasons, I believe the lower court and the master committed an abuse of discretion in dealing with the separation on its physical level, without determining when in fact, it became one with intention to abandon the marriage. I, therefore, would vacate the decree of divorce.